# J. F. SHAEFER, Respondent, v. THE MISSOURI PACIFIC RAILWAY COMPANY, Appellant.

### Kansas City Court of Appeals, February 16, 1903.

1. **Evidence: RES GESTAE: ASSAULT AND BATTERY: AGENT'S DECLARATIONS.** After a railway porter had choked a passenger, the latter said: "That's a nice way to treat a passenger here," when the porter replied: "That is my bread and butter and I will do it again." *Held,* admissible as *res gestae* since there was sufficient connection between the declaration and the event that it may be regarded not as a historical narrative, but as a verbal act forming part of the one transaction.

2. ———: ———: ———: ———. After a railway porter had quit choking a passenger. and a bystander said something about his abusing the passenger, the reply of the porter threatening such bystander with similar treatment is part of the *res gestae* and admissible.

3. ———: IMPROPER QUESTION: NEGATIVE REPLY: CONCLUSION: CROSS-EXAMINATION. When an inquiry for evidence is improper and the answer is in the negative, the inquiry is not prejudicial; and where an answer to a question as to whether the witness heard cursing, etc., the answer was in the affirmative, the opposite party can protect himself on cross-examination by requiring the witness to state what the language heard was, and if he fails to take such precaution he can not complain.

4. ———: OBJECTION: EXCEPTION. An exception to the admission of evidence must be preserved to secure a review of the action of the court therein.

5. ———: CONCLUSION. Where a witness has stated the facts and then adds a conclusion deduced by him from them, the latter is properly stricken out.

6. ———: WITNESS: REPUTATION: SPECIFIC ACTS. The veracity of a witness can not be impeached by inquiry as to the specific acts, and so it is improper to ask a witness whether he is a saloonkeeper or not with a view to affect his credibility.

7. ———: ———: IMPEACHMENT: DISPOSITION. Where a witness has sworn that he did not use profane language, it is not competent to discredit him by evidence showing him to be excitable, impulsive and accustomed to the use of profane language on slight provocation.

8. ———: OBJECTION: INSTRUCTION. Where evidence has been elicited and gone to the jury without objection, then an objection later on in the trial to like evidence does not reach the former, and an instruction excluding it from the consideration of the jury is rightly refused.

9. ———: CONFLICT OF: VERDICT AGAINST: OBJECTIONABLE TESTIMONY. On a review of conflicting evidence it is held that the exclusion of the evidence objected to by the defendant would not have changed the result.

10. Verdict: FIGURES: WORDS: RULE. The rule that where there is a variation between amounts expressed in numerals and words in a written instrument the written words must prevail, is applied to a verdict.

Appeal from Jackson Circuit Court.—*Hon. E. P. Gates,* Judge.

AFFIRMED.

*Elijah Robinson* and *J. L. Lorie* for appellant.

(1)    The trial court committed error in permitting the plaintiff to testify that after the difficulty had occurred the porter ran around the car and said, "This is my bread and butter, and if it was to do over I would do it again."    (2) The testimony, as to what occurred between the porter and the other traveling man (if it did occur) had no bearing whatever upon what had taken place between the conductor, the porter and the plaintiff, and it is difficult to conceive any theory upon which it was admitted.    However, it was calculated to prejudice the jurors against the defendant.    (3) The court committed error in permitting witness Krieger to answer the question asked by counsel for plaintiff as to whether the conductor or porter used any abusive or insulting language.    These statements upon the part of these witnesses were simply expressions of their opinion, their own conclusions as to what occurred, and not statements of facts.    (4) The court committed error in permitting plaintiff to testify as to what Mr. Bendure told

him about being influenced to testify in favor of the defendant. (5) Plaintiff took the deposition of a Mr. Kreigbaum. When the whole of the testimony of said witness is read it becomes perfectly apparent that this expression upon his part was simply in effect a statement that there was, so far as he could see, no other injury sustained by plaintiff. (6) The court committed error in excluding from the jury the testimony of several witneses as to the occupation of William Condon, who was a witness upon the part of the plaintiff, and the only witness who corroborated plaintiff as to what occurred in the car. Trabue v. Commonwealth, 66 S. W. 718. (7) The trial court also committed error in excluding from the jury the testimony as to the disposition and characteristics of the plaintiff. 1 Rice on Evidence, 625; McDowell v. Preston, 26 Ga. 528; Rathburn v. Ross, 46 Barb. 127; People v. Abbott, 19 Wend. 192; Stevens v. Rodgers, 25 Hun 54. (8) The court committed error in giving plaintiff's instruction No. 1. This instruction told the jury that defendant, as a common carrier of passengers, was bound not only to carry its passengers safely, but to treat them respectfully and with courtesy. This general statement was calculated to lead the jury to believe that the employees of the railroad company were bound to treat a passenger respectfully and with courtesy, regardless of the conduct upon the part of the passenger. (9) The verdict in this case is so clearly against the weight of the evidence that it is apparent the jurors must have been influenced by the evidence, the admission of which is hereinabove complained of, which was so clearly calculated to create a prejudice; and in a case of this kind no verdict ought to be permitted to stand where it appears from the record that evidence which was calculated to create prejudice in the minds of the jurors was improperly admitted. (10) The verdict of the jury was insufficient, and, on that account, the trial court should have set it aside, or sustained defendant's motion in arrest of judgment.

Where it can not be ascertained from the verdict what amount the plaintiff is entitled to recover, a judgment rendered thereon must be reversed. 2 Am. and Eng. Ency. of Pl. and Pr., page 910, and cases there cited.

*J. C. Rosenberger* and *Haff & Michaels* for respondent.

(1) The trial court did not err in overruling defendant's objection to plaintiff's testimony, that immediately after the negro porter had choked him, and when plaintiff expostulated with him, the porter said: "This is my bread and butter, and I would do it again." Taylor v. Penquite, 35 Mo. App. 402; Clark v. Loan Co., 46 Mo. App. 248; Margrave v. Ausmuss, 51 Mo. 561. It was part of the *res gestae*. (2) Appellant's complain in their point 2, that the court erred in permitting witness Condon to testify to things done by the porter after the negro had let go of plaintiff's throat. What was done by the porter or conductor or plaintiff immediately after the assault is an issue in the case, made so by the pleadings; and again, it is a part of the *res gestae*. (3) A non-expert may testify to his opinions or impressions if the manifestations, expressions, and conditions can not be correctly and intelligibly reproduced by language. State v. Buchler, 103 Mo. 207; Haymaker v. Adams, 61 Mo. App. 585; Madden v. Railroad, 50 Mo. App. 673. (4) Appellant next complains that the court erred in allowing plaintiff to testify as to what Mr. Bendure told him about being influenced to testify for the railroad company. But the record shows no exceptions saved to any ruling of the trial court on the questions or answers complained of, and therefore there is nothing before this court to review. Asbury v. Lenoir, 47 Mo. 298; Sawyers v. Drake, 34 Mo. App. 472. (5) Appellant's next complaint is that the court erred in sustaining plaintiff's motion to strike out part of the answer of witness Krigbaum. The court was entirely

correct in striking them out.   The words constituted no statement of fact.    "I think" and "probably" are words clearly denoting conclusion and opinion.   (6) Appellant next complains that the court erred in sustaining plaintiff's objections to questions put to certain of defendant's witnesses for the purpose of impeaching witness Condon.   The court's ruling was entirely correct.   Seymour v. Farrel, 51 Mo. 97; State v. White, 35 Mo. 500; Hawkins v. Globe Ptg. Co., 10 Mo. App. 174; 1 Greenleaf on Evidence, (14 Ed.), sec. 461b; Rapalje on Witnesses, section 199.   (7)   Appellant next complains of the court's ruling excluding testimony of the general characteristics and disposition of the plaintiff.   Collins v. Todd, 17 Mo. 537.   Evidence of particular traits and characteristics are always inadmissible for any purpose.   5 Am. and Eng. Ency. of Law (2 Ed.), 859; State v. Nelson, 101 Mo. 468.   (8) Appellant next complains of plaintiff's instruction No. 1.   This instruction was copied from an approved instruction in the case of Malecek v. Railroad, 57 Mo. 19, a case almost exactly like the one at bar.   The instruction correctly announced the law as laid down in above case and in Farber v. Railroad, 116 Mo. 91; Eads v. Railroad, 43 Mo. App. 545; Sacket on Instructions, pp. 327, 328; Randolph v. Railroad, 18 Mo. App. 615, et seq; McGinnis v. Railroad, 21 Mo. App. 399.   (9)   Appellant's next point is that the verdict is against the weight of the evidence and must have resulted from passion and prejudice.   It is idle for the appellant to expect this court to pass upon the weight of the evidence in view of the garbled and incomplete abstract it has brought to this court.   Goodson v. Railroad, 23 Mo. App. 76; Garrett v. Kansas City, 111 Mo. 279; Bowlin v. Creel, 63 Mo. App. 229; Loker v. Railroad, 68 S. W. 373; Haycraft v. Griggsby, 67 S. W. 965.   (10)   Appellant's final point is that it can not be ascertained from the verdict what amount the plaintiff is entitled to recover.

Mere clerical errors in drafting a verdict will be disregarded. Holmes v. Braidwood, 82 Mo. 610; Gurley v. O'Dwyer, 61 Mo. App. 348; Bank v. Pipkin, 66 Mo. App. 597.

SMITH, P. J.—This is an action by plaintiff against defendant to recover damages for an assault committed by a conductor and negro porter of the latter on the former while a passenger on a train of such latter.

The facts which the plaintiff's evidence tends to prove are stated with sufficient accuracy in the defendant's statement of the case, and are: That plaintiff was a passenger on the defendant's train on the evening of January 25, 1899, and when between St. Joseph, Missouri, and Atchison, Kansas, a difficulty occurred between him and the conductor. The testimony on both sides tended to show that plaintiff told the conductor he was going to Atchison and offered mileage tickets in payment of his fare; that the conductor informed him that he could not accept mileage to Atchison; that plaintiff then asked the amount of cash fare, and being told it was eighty-five cents, handed the conductor one dollar and the conductor gave him fifteen cents in change, and, while punching his receipt for the cash fare, remarked to plaintiff that he could take cash fare beyond Atchison, either in the direction of Kansas City or in the direction of Omaha; that thereupon plaintiff said he was going to Hiawatha, Kan., and told the conductor to take the mileage to Hiawatha; that the conductor then handed plaintiff back his dollar and received from plaintiff his fifteen cents change, the plaintiff at the same time handing to the conductor his mileage book; that the conductor took from the book the fare to Hiawatha, being tickets representing seventy miles, that being the mileage fare from St. Joseph to Hiawatha, and cancelled the same and returned the book to plaintiff; that thereupon plaintiff asked the conductor how much mileage he had taken, and the conductor replied seventy miles. Up to

this point there was no conflict in the evidence.    Then there was testimony on the part of the plaintiff tending to prove that, upon being told by the conductor that he had taken seventy miles, the plaintiff said he did not want to go to Hiawatha, and demanded the return of his mileage in a rather resolute and determined way, at the same time rising to his feet, and that thereupon the conductor said, ''G—d d—n you, why didn't you say so?'' and knocked or pushed the plaintiff down in the seat, and that he and the porter choked him.

There was a trial to a jury which resulted in judgment for plaintiff and defendant appealed.

I.    The plaintiff testified that after the porter had choked him he said to the latter:   ''That's a nice way to treat a passenger here,'' and the former replied: ''That is my bread and butter, and I would do it again.'' The defendant contends that since this utterance of the porter was after the choking took place that it should have been excluded on its objection.    One of the issues made by the pleadings was whether or not ''for thirty or forty minutes after the assault the conductor and porter continued to insult, abuse and villify plaintiff with coarse, obscene, profane and insulting language. This testimony tended to prove an issuable fact in the case, and besides, it was so clearly connected with the assault itself as to be a part of the *res gestae,* and it was therefore properly admissible.

The general rule is, that the declarations to form a part of the *res gestae* should be made contemporaneously, or nearly so, with the main event; yet, where there are any connecting circumstances between such event and the declarations, the latter, though made some time afterwards, may form a part of the *res gestae.* And it is sufficient if there is such connection between the declaration and event, that although the declaration is made some time after the event, it may be regarded, not as an historical narrative but as a verbal act forming a part of one transaction.    Harriman v. Stowe, 57

Mo. 93; Stoeckman v. Railroad, 15 Mo. App. 503.  According to this rule, we think the testimony was properly admitted.

II. The witness Condon testified that "when the negro porter grabbed Shaefer (plaintiff) by the throat with both hands, everybody in the car was running to Shaefer's rescue.  When I got up there the negro let go Shaefer and stepped back and another big traveling man there said something to him about abusing Shaefer, and the 'nigger' threatened him that he would get treated similar if he didn't keep his mouth shut."  This we think, was so closely connected with the assault as to be a part of the *res gestae*.

III. During the examination of witness Krieger the plaintiff's counsel inquired of him whether or not the conductor or porter used any boisterous, unseemly or insulting language to plaintiff.  The witness answered that he heard some words mumbled but that he could not tell what they were.  It is sufficient to say that while the inquiry was improper as calling for the expression of a conclusion of the witness, yet, as the witness answered in the negative the inquiry did not prejudice the defendant.  The plaintiff was permitted to inquire of witness Condon whether or not he heard any cursing or abusive language used, and if so to state by whom.  The witness answered that he did.  The defendant could have protected itself if it had cared to do so by exercising its privilege of cross-examination.  It could have asked the witness to state the language used, but this was not done.  And if the opinion of the witness was erroneous it was in the power of defendant by cross-examination to explode it by calling on him to state the language used by the conductor and porter.  If the defendant failed to take this precaution he ought not to be heard to complain of the action of the court.  Besides, the evidence of the witness was somewhat cumulative and while the question by which it was brought out was not perhaps proper, we do not feel at liberty to reverse

the judgment on that account unless we could discover that prejudice resulted from the action of the court in permitting it to be answered.

IV. The defendant objects that the court erred in permitting the plaintiff to testify that one Bendure told him about being influenced to testify in favor of the defendant. Upon examining the record we do not find that any exception was preserved to the ruling of the court in permitting the plaintiff to testify as to the declarations of Bendure, and for that reason the alleged error can not be reviewed here.

V. On cross-examination, plaintiff's witness Krigbaum testified that after the encounter he noticed Shaefer's collar and necktie were disarranged and that *"I think that was probably the only injury plaintiff sustained in the scramble."* That part of the witness's testimony which we have quoted and *italicised* was on motion of plaintiff excluded. The witness had already stated what he had seen and the quoted part of his testimony is no more than an expression of a conclusion deduced by him. This was a usurpation of the province of the jury and was properly stricken out.

VI. The defendant inquired of several of the witnesses if they knew the reputation of the plaintiff's witness, William Condon, for truth and veracity. After they had answered this question they were further asked if they knew what business he was engaged in, to which they answered: "In the saloon or 'joint' business." The plaintiff objected to the question by which this answer was called out, and which objection was by the court sustained. Under the rulings in this State a witness may be impeached not only by a general reputation as to veracity, but the inquiry may extend to the general moral character or reputation of the witness. State v. Shields, 13 Mo. 236; State v. Hamilton, 55 Mo. 520; State v. Breeden, 58 Mo. 507; State v. Clinton, 67 Mo. 380; State v. Miller, 71 Mo. 590; State v. Patrick, 107 Mo. 147; State v. Grant, 79 Mo. 1. c. 133. But evidence

as to specific acts is held inadmissible (1 Greenleaf Ev., sec. 461). Evidence of general moral character of the witness being admissible, it must follow that anything showing determination of that general moral character or reputation is also admissible. State v. Grant, supra. The inquiry in the present case did not extend to the general moral character or reputation of the witness.

The veracity of a witness can not be impeached by inquiry as to specific acts of past delinquencies. State v. Gesell, 124 Mo. 531. And so evidence of specific and independent immoral acts is not admissible for the purpose of impeaching the credibility of a witness. Seymour v. Farrell, 51 Mo. 95; State v. Rogers, 108 Mo. 202; State v. Grant, supra; State v. Beaty, 25 Mo. App. 214. Evidence tending to show that the witness had been in the saloon business or liquor traffic is, under the rule to which we have referred, inadmissible for the purpose of impeaching his credibility. A saloon-keeper or liquor-dealer may or may not be a credible person, but evidence of the fact that he is or has been such can not be received to impeach his credibility, so we do not think the ruling of the court was erroneous.

VII. The court rejected the defendant's offers of evidence to prove the disposition and characteristics of plaintiff: that is to say, that he was excitable, impulsive and was accustomed, on the slightest provocation, to use profane language. The plaintiff in answer to questions asked him by defendant on cross-examination stated that at the time of the difficulty he did not use profane language and that he was a Christian, but not better than any other man, but as good as the average man. We do not think the proffered evidence was competent to discredit that given by plaintiff. It was clearly irrelevant.

VIII. The plaintiff's first instruction correctly expressed the law applicable to the case. Malecek v. Railroad, 57 Mo. 18; Farber v. Railroad, 116 Mo. l. c. 91. And defendant's second and third were rightfully

refused. It is manifest from the unobjected-to testimony of the plaintiff that the *casus belli* was the detachment by the defendant's conductor of more mileage than the former thought the latter had a right to. This was a fact for the jury to consider along with the other facts in evidence. It is true that the defendant, near the close of the cross-examination of its conductor, objected that it was immaterial as to the mileage "pulled" by the conductor, but the evidence relating to it had previously been elicited without objection, and the objection then made did not reach it. Such evidence was therefore before the jury and the defendant's instruction excluding it was rightfully refused. Ring v. Railroad, 14 Mo. App. 579; Drehman v. Stifel, 41 Mo. l. c. 184. Such evidence was a part of the *res gestae* and should have been admitted on that ground.

IX. The defendant insists that the verdict is so clearly against the evidence that it is apparent that the jurors must have been prejudicially influenced against it by the admission of the evidence of which it has complained. It must be conceded that the evidence is so conflicting as to render it utterly impossible to reconcile it. If credence is given to plaintiff's evidence, then the conclusion is irresistible that the assault was not only committed upon plaintiff by the defendant's conductor and negro porter, but that it was of the most flagrant and aggravated character, fully justifying the verdict; and on the other hand, that adduced by defendant is such as to create a doubt as to the justice and propriety of the verdict. But there has already been three jury trials of the cause with a like result in each. In view of this, we would not feel justified in overthrowing the verdict on the ground that it was the result of prejudice engendered in the minds of the jury by the admission of the objected-to evidence. We can not but think that if all the evidence to which defendant made objection were out of the case, the result would have been the same.

X.   In the verdict the amount was expressed in numerals and words thus: "at the sum of $750, seven hundred dollars." The plaintiff remitted fifty dollars and judgment was thereupon given for seven hundred dollars. No reason is seen why the rule to the effect that where there is a variation between amounts expressed in numerals and words in a written instrument, the written words must prevail over the numerals, should not apply to a verdict in a case like this. Bank v. Pipkin, 66 Mo. App. 597. By the application of this rule the numerals become eliminated from the verdict, leaving it unexceptionable in expression.

·The judgment is accordingly affirmed.   All concur.