STATE OF IOWA, Appellee, v. C. ALLEN SNYDER, Appellant.

**INDICTMENT AND INFORMATION: Needless Allegations—Abortion.** An allegation in an indictment for murder, based on an attempted miscarriage, that the female was pregnant, in no wise affects her identity, and calls for no proof.

**CRIMINAL LAW: Instructions—Permitting Fact to Be Found at Nonmaterial Time.** When the existence of a fact has its real and only significance at a *certain and definite time or occasion,* it is prejudicially erroneous to permit the jury to find the fact "on or about" a named month. So held in a prosecution for murder, based on an alleged miscarriage, where the fact of pregnancy had no real significance, except on the occasion of a certain visit to the defendant.

*Appeal from Dubuque District Court.—*J. W. KINTZINGER, Judge.

APRIL 13, 1920.

INDICTMENT for murder in the second degree. There

was a verdict of guilty, and judgment entered thereon. The defendant has appealed.—*Reversed.*

*Nelson & Duffy* and *Walter Koerner,* for appellant.

*H. M. Havner,* Attorney General, *F. C. Davidson,* Assistant Attorney General, and *Charles W. Lyon,* for appellee.

EVANS, J.—The defendant was a practicing physician in Dubuque, on and prior to November 19, 1917. The indictment charged him with the violation of Section 4759 of the Code, in that he unlawfully attempted to produce an abortion upon Grace Wolf, and thereby inflicted upon her injuries from which she died. The errors relied on for reversal are based largely upon the instructions of the court.

1. INDICTMENT AND INFORMATION: needless allegations: abortion.

Section 4759, as it was before its amendment by the thirty-sixth general assembly, was as follows:

"If any person, with intent to produce the miscarriage of any *pregnant* woman, willfully administer to her any drug or substance whatever, or, with such intent, use any instrument or other means whatever, unless such miscarriage shall be necessary to save her life, he shall be imprisoned in the penitentiary for a term not exceeding five years, and be fined in a sum not exceeding one thousand dollars."

By amendment of the thirty-sixth general assembly, the word "pregnant" was omitted from such statute. This amendment appears to have been overlooked, and the indictment was predicated upon the statute in its original form. It is one of the contentions of the defendant that the trial court failed to put upon the State the proper burden of proof on the question of pregnancy. Responding to this complaint, the State contends that the word "preg-

nant" in the indictment was mere surplusage, and that the
State was under no burden of proof thereon. The response
of the defendant to this argument is that, if the indict-
ment adopted needless particularity in its allegations, the
burden still rests upon the State to prove the particular
allegations set forth, even though they were needlessly set
forth.

Mrs. Grace Wolf was a young, married woman, who
lived at Lansing. She visited the defendant's office at about
8 P. M. on November 19, 1917, for professional treatment.
Shortly thereafter, she disclosed symptoms of septicemia,
and grew worse daily until she diéd, on December 3d. It
is the charge of the State that the defendant did then and
there use an instrument upon her, with intent unlawfully
to produce a miscarriage, and that her death resulted from
such unlawful act on the part of the defendant.

The trial court gave, among others, Instructions V
and XXIV, which will sufficiently disclose the basis of one
ground of complaint by defendant. These instructions were
as follows:

"V. In order to warrant you in finding the defendant
guilty of the crime charged in the indictment in this case,
it will be necessary for the State to establish each and all
of the following propositions by the evidence, beyond all
reasonable doubt:

"(1) That, on or about the month of November, 1917,
and prior to the finding of the indictment in this case, the
said Grace Wolf was pregnant.

"(2) That, prior to the finding of the indictment, and
in the county of Dubuque and state of Iowa, the defend-
ant, C. Allen Snyder, with malice aforethought, willfully
and intentionally used an instrument upon the body of the
said Grace Wolf, with intent thereby to produce a miscar-
riage of her, the said Grace Wolf.

"(3) That the said Grace Wolf died on or about the 3d day of December, 1917.

"(4) That the use of such instrument by the defendant, with intent to produce a miscarriage of the said Grace Wolf, was the direct and natural cause of her death.

"(5) That the miscarriage of the said Grace Wolf was not necessary to save her life.

"If each and all of the foregoing propositions have been established by the evidence beyond all reasonable doubt, it will be your duty to find the defendant guilty.

"If the State has failed to establish any one of the foregoing propositions beyond all reasonable doubt, then and in that event it will be your duty to find the defendant not guilty."

"XXIV. If you find from the evidence, beyond all reasonable doubt, that, on or about the month of November, 1917, the said Grace Wolf was pregnant, and if you further find from the evidence, beyond all reasonable doubt, that, on or about November, 1917, in the county of Dubuque and state of Iowa, the defendant, C. Allen Snyder, unlawfully, willfully, and feloniously, and with malice aforethought, used an instrument upon the body of said Grace Wolf, and if you further find from the evidence, beyond all reasonable doubt, that said Grace Wolf died on or about the 3d day of December, 1917, and if you further find from the evidence, beyond all reasonable doubt, that the use of such instrument by the defendant, with intent to produce a miscarriage, was the direct and natural cause of her death, and if you further find from the evidence, beyond all reasonable doubt, that the miscarriage of said Grace Wolf was not necessary to save her life, then and in that event it will be your duty to find the defendant guilty of murder in the second degree."

It will be noted from the foregoing that the court laid upon the State the burden of proving beyond reasonable

doubt that Mrs. Wolf was pregnant "about the month of November, 1917." This is the form in which this question was repeatedly submitted and referred to in several instructions. The complaint is that the burden should have been put upon the State to show the fact of pregnancy at the time of Mrs. Wolf's visit to the defendant.

It was not necessary for the State to have alleged in the indictment that Mrs. Wolf was pregnant at the time of the unlawful acts of the defendant. As a mere question of pleading, therefore, we should have no hesitancy in holding that the use of the word in the indictment could be deemed as surplusage. Nor are we disposed to hold that it is a case where the State has put upon itself the burden of proof by needless particularity of description. Illustrations of this class of cases may be found in *State v. Schuler,* 109 Iowa 111; *State v. Hesner,* 55 Iowa 494; *State v. Whalen,* 54 Iowa 753; *State v. Newland,* 7 Iowa 242; *State v. Crogan,* 8 Iowa 523.

The particularity involved in this class of cases relates to description of identity of some essential thing or subject set forth in the indictment. For instance, in an information for selling or keeping for sale intoxicating liquors, if it be alleged therein that the intoxicating liquor was *whisky,* such allegation must be proved, as laid. In such case, it would not be sufficient to show the selling or keeping for sale of *beer.* Also, upon indictment for maintaining a nuisance, if the building be described by particular numbers or other specific description, the defendant is not put upon his defense as to any other building. In such cases, the very specification narrows the charge, and eliminates consideration of any offense outside of such specification. The necessary result is that the defendant is not put to a defense as to any matter not covered by the specifications of the indictment.

To say of Mrs. Wolf that she was pregnant is not de-

scriptive of her identity, nor does it affect her identity in any way. Whether the allegation were true or otherwise, her identity is unmistakable, in either event. It follows that the crime with which the defendant was charged could have been perpetrated, even though Mrs. Wolf were not pregnant. It is enough, in such a case, that the defendant, believing her to be in such condition, used instruments, with the unlawful intent to produce a miscarriage, and that she died as a result of the injuries thus inflicted.

Having thus stated this broad proposition, it must yet be said that it does not fully meet the question of alleged error in the instructions on this point. Notwithstanding that the fact of the pregnancy was not a ma-

2. CRIMINAL LAW: instructions: permitting fact to be found at nonmaterial time.

terial allegation in the indictment, yet the fact, if such, was an important circumstance, which had a very direct bearing upon the question of guilt or innocence. Under the evidence in this case, the guilt or innocence of the defendant could not be determined without passing upon such fact. If the allegation of the indictment had, therefore, been deemed surplusage, and had been treated as such, yet the court could properly have incorporated this question as one of the subjects of its instructions. Inasmuch as the court did do so, the fact that the word "pregnant" was mere surplusage in the indictment will not cure error in the instructions actually given, if they failed to put the subject before the jury in the light of its real significance.

The fact of pregnancy in October and November was virtually undisputed. It was made to appear from the testimony of both sides. The mere emphasis, therefore, in the instructions, laying upon the State the burden of proving the pregnancy "on or about the month of November," tended to conceal, rather than to disclose, the true significance of the question. The evidence for the defense tended to show that Mrs. Wolf's condition had been a matter of great solicitude

to her for a considerable time before she visited the defend-
ant, and that she had, herself, made efforts with instru-
ments to produce a miscarriage. According to the defend-
ant's evidence, she was already suffering from the symptoms
of septicemia, at the time of her visit to him. Her visit
there was a matter of comparatively few minutes. There
is no evidence of any miscarriage occurring after she left his
office. According to the expert witnesses for the State, a
post mortem disclosed a punctured wall of the uterus. This
was the undoubted cause of the infection which resulted in
fatal blood poisoning. The post mortem also disclosed that
there was no pregnancy at the time of her death, but that
the condition of the uterus indicated that there had been
pregnancy and a miscarriage. The really significant ques-
tion for the consideration of the jury was, therefore, not
whether she was pregnant "on or about the month of No-
vember, 1917," but whether she was still pregnant at the
time of her visit to the defendant. The evidence against
the defendant is largely circumstantial. The only direct
evidence is the dying statement of Mrs. Wolf. This was
formulated and put in writing by an attorney, and signed
by her. Her father, as a witness for the defendant, testified
that she had afterwards repudiated the statement. Unless
the jury could find from the evidence, beyond a reasonable
doubt, that the patient was pregnant at the time of her visit
to the defendant, it could not properly find that the de-
fendant caused the miscarriage which resulted in her death.
This would mean that the miscarriage had been previously
produced, either by Mrs. Wolf herself or otherwise. One
of the symptoms of the increasing infection was a bad cough,
caused by the development of the infection into the pleural
cavity. The witnesses on both sides testified to the fact
that Mrs. Wolf had a bad cough for at least two days be-
fore she visited the defendant. The defendant's testimony

was that she had a temperature of 101 when she visited him.

Upon this state of the evidence, it is clear that, if the attention of the jury was to be directed at all to the question of pregnancy, the question should have been submitted as of the very time of the visit. It is to be said that one of the instructions did properly put the burden of proof upon the State to show the pregnancy as of that time. The difficulty with the record is that this instruction was apparently qualified by other instructions, such as we have above quoted.

Referring again specifically to Instruction V, it put upon the State the burden of proof:

"(1) That, on or about the month of November, 1917, and *prior to the finding of the indictment* in this case, the said Grace Wolf was pregnant."

What possible relation or connection could there be between the time of pregnancy and the time of finding the indictment? The same form of expression is used in one other instruction. Such expression could serve no other purpose than confusion.

There was no occasion for putting the burden of proof on this question in the different forms. The only effect of one was to negative or qualify the other. We do not hold that it was essential that the court should have emphasized the question of pregnancy. But, having done so, it was important that the emphasis should have been held to the particular point of time at which the question had its real significance, in the light of the evidence. The defendant was entitled to have submitted to the jury in some form the hypothesis which his evidence tended to show: that a miscarriage had been produced prior to the visit. Such hypothesis was submitted to the jury in no other manner by the instructions than by this presentation of the question of pregnancy.

If we were to eliminate that question and all that is said thereon in the instructions, on the theory of surplusage, we should so dismember the instructions as to render them wholly inadequate as a presentation of the case. We are constrained to hold, therefore, that there was prejudicial error in the respect herein indicated.

Other errors are assigned. Some of these are interwoven with the question here considered, and we need not discuss them separately. Some are based upon the alleged misconduct of the prosecuting attorney, and others upon the alleged misconduct of the jurors. These are all questions that are not likely to arise upon another trial. In view of our conclusion here announced on the one question, we need not consider these.

For the reason stated, the judgment below will be reversed, and a new trial ordered.—*Reversed.*

WEAVER, C. J., and PRESTON, J., concur.

SALINGER, J., concurs in result.