[Crim. No. 1084. Second Appellate District, Division One.—May 12, 1924.]

THE PEOPLE, Respondent, v. HARRY DEWINDT, Appellant.

[1] CRIMINAL LAW—EMBEZZLEMENT OF MONEYS FROM IRRIGATION DISTRICT—PLEADING—DESCRIPTION OF DISTRICT AS MUNICIPAL CORPORATION—STATUS OF DISTRICT—HOW DETERMINED.—In a prosecution for embezzlement of moneys belonging to an irrigation district, which was described in the information as a municipal

---

1. See 18 Cal. Jur. 697.

corporation, the status of the irrigation district and whether it was or was not a municipal corporation, was to be determined from the statute which provided for its formation, and not from any evidence that might have been introduced at the trial.

[2] ID.—PLEADING—DESCRIPTION OF DISTRICT—HARMLESS ERROR.—In such prosecution, the designation of the irrigation district, in the information, as a municipal corporation was not a material part of the information. At most it was simply a description of the person injured, and even conceding that this was an erroneous description, it was not such an error as would justify a reversal of the judgment rendered against the defendant where it worked no injury to him.

[3] ID.—DEMAND AND REFUSAL TO RETURN MONEY—PROOF UNNECESSARY.—In such prosecution, proof that a demand had been made upon defendant for the money, in his possession, belonging to the district, and that he had refused to return the money after such demand, was not necessary in order that he might be found guilty of the crime of embezzlement.

[4] ID.—INSTRUCTIONS—PROPER REFUSAL OF.—In such prosecution, the trial court properly refused to give two instructions requested by the defendant which, if given, would have told the jury that proof of demand for the money in defendant's possession and refusal to return the same were necessary in a prosecution for embezzlement.

[5] ID.—VERDICT—EVIDENCE.—In such prosecution, the evidence was sufficient to warrant the jury in rendering a verdict of guilty against the defendant.

(1) 20 C. J., p. 480, sec. 75 (1926 Anno.). (2) 17 C. J., p. 283, sec. 3617, p. 287, sec. 3626. (3) 20 C. J., p. 429, sec. 17, p. 430, sec. 17 (1926 Anno.), p. 467, sec. 62. (4) 20 C. J., p. 490, sec. 86 (1926 Anno.). (5) 20 C. J., p. 486, sec. 82.

APPEAL from a judgment of the Superior Court of Imperial County and from an order denying a new trial. Franklin J. Cole, Judge. Affirmed.

The facts are stated in the opinion of the court.

John A. Berry for Appellant.

U. S. Webb, Attorney-General, John W. Maltman, Deputy Attorney-General, and John L. Flynn for Respondent.

2. See 10 Cal. Jur. 257; 9 R. C. L. 1291.
3. See 10 Cal. Jur. 259; 9 R. C. L. 1276, 1292.

CURTIS, J.—Appellant was charged with the embezzlement of $942 from the Imperial Irrigation District. The jury returned a verdict against the defendant, and he appeals from the judgment of conviction, and from the order of the court denying his motion for a new trial.

The defendant was employed as assistant cashier of the Calipatria Division of the Imperial Irrigation District from the twenty-sixth day of July, 1923, to and including the eighteenth day of August, 1923. On August 9, 1923, Mr. Hewitt, the cashier of this division of the district, went on a vacation, and the defendant was left in charge of the office of the district during the absence of the cashier. The defendant was arrested on Saturday, the sixteenth day of August, 1923, at about 7 o'clock in the evening. At the time of his arrest he had on his person $792, money belonging to the Imperial Irrigation District. He had previously made arrangements with one Pelfey to drive him from Calipatria to Calexico, and he was arrested just as he was leaving his room on his way to Pelfey's machine, in which he was to ride from Calipatria to Calexico. A few days before his arrest he had made several trips to Mexicali, which is just across the international boundary line, between California and Mexico, from the city of Calexico. On one of these trips he had been observed by Mr. Guest, the superintendent of the Calipatria Division of the Irrigation District, who testified that he saw the defendant gambling. Immediately after his arrest he said to the arresting officer: "Well, there is no use, I had just as well be a good sport. I am only short about $100 and I will fix that up all right." Mr. Guest, the superintendent, testified that he had a conversation with the defendant at the city jail at Calipatria shortly after his arrest, and the following is Mr. Guest's testimony: "He said he spent some of the money in Mexicali and he intended to repay it back, but that he had spent so much he didn't see how he could pay it back. I asked him how much he had spent, and he said $150 or $200 at the outside. Q. Did he say how he spent the money in Mexicali? A. Yes, sir; gambling. Q. State anything else he said. A. He said after thinking he had spent so much he couldn't pay it back, he might as well get all he could and get away before they caught him."

On August 20, 1923, an audit of the books of the company showed a total shortage in defendant's account with the district of $1,005.45. The testimony further showed that the defendant, at 11 o'clock on the morning of the day of his arrest, drew from the bank, on a check drawn by him to "Cash," the sum of $250. When asked by an officer of the bank if it was not out of the ordinary to draw such a check at such a time, the defendant replied that he was drawing the check to pay some bills. The testimony further shows that the defendant in his conversation with Mr. Guest, the superintendent, shortly after his arrest, admitted that besides the $792 which was taken from him, he still owed the district something like $150 to $200, and that if given time he could get the amount due from him and he would pay it to the district, and that after the audit of the books of the district had been made he did pay to the district the sum of $213.45, to cover the balance due from him.

The information charges that the defendant was the agent and servant of the Imperial Irrigation District, "a municipal corporation," and that by virtue of his employment, the money belonging to the said district, and which he was accused of embezzling, came into his hands as such agent and servant, and that thereafter he embezzled and appropriated this money to his own use.

Appellant contends that there was no evidence introduced at the trial which tended to prove that the Imperial Irrigation District was a municipal corporation, but that the only evidence upon this point was to the effect that the Imperial Irrigation District was a *quasi*-public or *quasi*-municipal corporation. He further contends that he was charged with embezzling the money of a municipal corporation, and that the prosecution could not substitute any other corporation in the place of the one designated in the information. By reference to the information it would appear that appellant was charged with embezzling the money of the Imperial Irrigation District, a municipal corporation. [1] The status of the Imperial Irrigation District and whether it was or was not a municipal corporation, was to be determined from the statute which provided for its formation, and not from any evidence that might have been introduced at the trial. [2] The designation of the Imperial Irrigation District, in the information, as a municipal

corporation was not a material part of the information. At most it was simply a description of the person injured, and even conceding that this was an erroneous description, yet it does not appear from anything that has been brought to our attention, that the defendant was in any way injured by this misdescription. The Imperial Irrigation District, we assume, was a well-known institution in the community where the defendant resided. It was evidently well-known to the defendant who was, at the time of his arrest, an employee thereof. Defendant does not claim to have been misled by any failure to properly describe in the information the Imperial Irrigation District, or to have sustained any injury by any such mistake. If, therefore, there was any error in the description of the Imperial Irrigation District, as long as this error worked no injury to the defendant, it is not such an error as would justify this court in disturbing the judgment rendered against the defendant.

[3] It is next contended by the appellant that before he could be found guilty of the crime of embezzlement, it was necessary for the prosecution to prove that a demand had been made upon him for the money in his possession, belonging to the district, and that he had refused to return the money after such demand. The only authority cited by appellant in support of this contention is *People* v. *Crane,* 34 Cal. App. 599 [168 Pac. 377]. This case, in our opinion, not only fails to sustain appellant's position, but holds directly to the contrary. On page 610 of the opinion of this case we find the following statement of the law upon this subject: "The contention that no embezzlement of the money could take place without a demand by the owner for its return having been previously made upon the defendant is untenable. A demand for the return of property or money entrusted to a bailee or trustee, followed by a refusal to return the property or money, is not itself an element of the crime of embezzlement, but constitutes mere evidence of embezzlement. It is true that a demand, followed by a refusal, is sometimes indispensable evidence of embezzlement, but it is the fraudulent and felonious conversion of the money or other property that constitutes the offense, and that may often be proved without a demand. (Citing cases.)" We have found no authority in conflict with this

case of *People* v. *Crane,* and in our opinion it completely disposes of this contention of appellant.

[4]    There was no error on the part of the court in refusing to give two instructions requested by the appellant. These proposed instructions were offered upon the theory that in order to prove that defendant was guilty of embezzlement it was necessary for the prosecution to prove a demand for the return of the money in the possession of defendant, and a refusal on the latter's part to comply with such demand. We have already considered that subject and have held adversely to appellant's contention that such proof of demand and refusal were necessary in a prosecution for embezzlement. These proposed instructions, therefore, in our opinion, fail to correctly state the law, and the court committed no error in refusing to give them.

[5]    In a general way appellant raises the point that the evidence was insufficient to sustain the verdict. The point, however, was not argued to any extent by appellant. We conclude, therefore, that this point has been practically abandoned by the appellant. We have, however, reviewed the evidence in the case, and in our opinion it was clearly sufficient to warrant the jury in rendering a verdict of guilty against the defendant.

The judgment and order denying motion for a new trial are affirmed.

Conrey, P. J., and Houser, J., concurred.