STATE OF IOWA, Appellee, v. SAM JAPONE, Appellant.

STATE OF IOWA, Appellee, v. BEN JAPONE, Appellant.

INDICTMENT AND INFORMATION: Trial Information—Verification.
1 The verification of a trial information by a county attorney as being true "as I verily believe," being in the language of the statute (Sec. 13674, Code of 1924), is all-sufficient.

INTOXICATING LIQUORS: Nuisance—Indictment—Negativing Permit.
2 mit. An indictment or trial information for maintaining an intoxicating liquor nuisance need not negative the existence of a permit to the accused.

INTOXICATING LIQUORS: Nuisance—Indictment—Sufficiency. Information by county attorney for nuisance reviewed, and held sufficient.
3

INDICTMENT AND INFORMATION: Amendment—Striking Unnecessary Allegation in re Nuisance. A trial information by the county attorney for maintaining an intoxicating liquor nuisance in a named county "in the city of Cedar Rapids" may, after the jury is sworn, be amended by striking therefrom the clause "in the city of Cedar Rapids," it appearing that the said clause was a manifest error, and that the accused so knew, and requested no further time for trial.
4

INDICTMENT AND INFORMATION: Amendment—Waiver of Formal Amendment. The objection that no *formal* amendment to an indictment was filed after the sustaining of the motion to amend, will be deemed waived when the trial was conducted precisely as it would have been conducted, had the formal amendment been filed, and when the objection was withheld until exceptions to the instructions were filed.
5

CRIMINAL LAW: Evidence—Opinion Evidence—Identity of Part of Exhibit—Permissible Conclusion. A witness may testify that an article found by him under named circumstances with which the accused is connected, is a detached or torn-off part of another exhibit with which the accused is likewise connected.
6

INTOXICATING LIQUORS: Nuisance—Evidence—Sufficiency. Evidence reviewed, and held ample to sustain a conviction for nuisance.
7

**INTOXICATING LIQUORS:** Nuisance—Nonexcessive˜ Sentence. The
8   maximum statutory penalty is not excessive, under testimony show-
ing the possession of a large quantity of liquor for immediate distri-
bution.

**CRIMINAL LAW:** Appeal and Error—Record—Scope and Contents.
9   The entire return by a magistrate to the district court of a prelimi-
nary hearing is a part of the record of a trial on an indictment
growing out of such hearing.

Headnote 1: 31 C. J. p. 646; 33 C. J. p. 715. Headnote 2: 31 C. J. p.
725; 33 C. J. p. 727. Headnote 3: 33 C. J. p. 734. Headnote 4: 31 C. J.
p. 827. Headnote 5: 17 C. J. p. 287 (Anno.) Headnote 6: 16 C. J. p.
748; 22 C. J. p. 531. Headnote 7: 33 C. J. p. 770. Headnote 8: 33 C. J.
p. 797. Headnote 9: 17 C. J. p. 123 (Anno.)

Headnote 1: 25 L. R. A. (N. S.) 63; 14 R. C. L. 171. Headnote 2:
15 R. C. L. 389. Headnote 4: 14 R. C. L. 192.

*Appeal from Linn District Court.*—JOHN T. MOFFIT, Judge.

JUNE 21, 1926.

REHEARING DENIED OCTOBER 22, 1926.

Defendants, Sam Japone and Ben Japone, appeal from
judgments of conviction on separate informations against them
for liquor nuisance.—*Affirmed.*

*Carl F. Jordan,* for appellants.

*Ben J. Gibson,* Attorney-general, and *Neill Garrett,* Assist-
ant Attorney-general, for appellee.

MORLING, J.—The only evidence in the case is that given by
the sheriff and by a police officer. The sheriff testifies that he
had a call from a man living in that vicinity, and that, about
9:30 in the morning, he went out on the Lincoln Highway, two
miles east of the city limits of Cedar Rapids, to a point where a
road—not a main-traveled road—leads off to the left. This road
turned again to the right. It was not full width; was the width
of the car. There were no fences. From this side road, and
about 200 yards from the paving, another road branched off to
the left or north, made a loop, and turned back to the first by-

road. The vicinity was hilly. The road lay through the timber, and the shrubbery and brush were pretty thick. The place was secluded. About 50 feet off the last mentioned road, down in the hill in the timber, the sheriff found 5 five-gallon cans of alcohol. 50 yards (feet?) farther down the hill, in the same timber, he found 5 other five-gallon cans, planted in the bushes. The cans were concealed, and could not be observed from a place 5 or 10 feet from them. The cans were in pasteboard cartons. There were also 4 empty cartons, from which the cans had been removed. The sheriff says:

"We found several other places in the vicinity where you could see where it looked just as though cans similar to these had been placed, and had been removed."

The sheriff left deputies in charge. The sheriff took 8 of the five-gallon cans to town, left the 2 that were nearest the road, and left the cartons of the 8 in the same position in which he found them. At about 3:30, the sheriff returned to the place, and with the police officer hid in the bushes, where they could observe the liquor. About 5:30, the two defendants drove up in a Marmon car, "to a point exactly opposite where the liquor was planted, * * * 40 feet from the first plant, and the other plant was about 50 feet [yards?] west, beyond that." The sheriff says:

"Sam Japone remained standing at the top of the hill, and Ben Japone walked directly down to this first plant, where the first five-gallon cans were, and walked right into the clump of bushes, among the cans. * * * Stanley and I slipped across the road, and when we got to the top of the hill, where we could see down to where the liquor was planted, Ben Japone was in the act of picking up one of the cans of liquor. Sam saw us about that time, and began to talk very fast in Italian, or some language we could not understand, and Ben straightened up, and fastened his belt on his trousers, and stood there."

The police officer says that defendants stopped the automobile in this drive, directly opposite the path that led down to the place where this alcohol was; that Sam stood at the automobile, and was looking around, and Ben disappeared in the bushes and the swale, toward the alcohol; that, when Sam observed them, he yelled something in some foreign language, "and seemed to be pretty much agitated, and Ben straightened up very quickly,

and seemed rather nervous and agitated, and didn't know which way to turn, until he was told to come where we were." The sheriff says:

"The one who was on the lookout at the top of the hill became very much excited, the minute he saw us, and, as I said, began to talk to the other one very rapidly in Italian, or some other foreign language; and they were both very much excited, and gave that appearance."

The defendants were put under arrest. The officers found in the automobile three or four pint bottles, two or three containing a trace of alcohol, and one of coffee. They also found a piece of cardboard, similar to that of the containers in the bushes. The car had an Illinois license number. Defendants made no explanation of their presence, but stated then or later that they lived in Springfield, Illinois.

I. The prosecutions are by county attorney's informations. It is first claimed that the informations are insufficient because verified on information and belief. The verification is by the

1. INDICTMENT AND INFORMATION: trial information: verification.

county attorney, to the effect that he has made a full and careful investigation of the facts upon which the charge is based, and "that the allegations contained in the above and foregoing information are true, as I verily believe." Defendants cite *People v. Shockley,* 311 Ill. 255 (142 N. E. 481). Whatever may be the practice in Illinois, the affidavit conforms to our practice, and is all that can be expected if the statute allowing prosecution by information is to be of any effect: *Koch v. District Court,* 150 Iowa 151, and cases cited.

II. It is next objected that the informations are insufficient because they do not negative the existence of a permit (citing

2. INTOXICATING LIQUORS: nuisance: indictment: negativing permit.

*People v. Martin,* 314 Ill. 110). Our statute expressly declares that the information need not negative any exceptions. Code of 1924, Section 1952.

III. It is stated that the informations consist of conclusions generally, and not facts. The informations are in the

3. INTOXICATING LIQUORS: nuisance: indictment: sufficiency.

usual form, approved in *State v. Dixon,* 104 Iowa 741, and other cases, and are in conformity with the statute.

IV. The informations charge that the defendants did

"keep, maintain, and use a certain building or place in the city of Cedar Rapids, Linn County, Iowa, for the purpose and with the intent of keeping," etc. After the jury was sworn, the county attorney asked leave to amend by striking out the words "the city of Cedar Rapids." Defendants objected, on the grounds that they were surprised, and that "this amendment is not an amendment in matter of form, but goes to the substance * * * and changes the allegations of the indictment, and forces the defendants to provide proof of not having maintained a liquor nuisance in some place different from the city of Cedar Rapids, where it was formerly alleged they maintained said nuisance." It was objected that to allow the amendment would be in violation of Section 13744, Code of 1924. No effort was made to show that defendants were in fact surprised. The memorandum of testimony attached to the informations stated that one witness named would testify that they located alcohol in cans in bushes or brush near the Lincoln Highway in Linn County, Iowa; that another witness named would testify that he found alcohol planted in a deserted place on a byroad off Lincoln Highway, in Linn County, Iowa; that the witnesses saw these defendants drive up in a Marmon automobile, and go to where the liquor was hidden. The preliminary informations alleged that the nuisance was maintained in Cedar Township, Linn County, Iowa. Defendants' objections were overruled.

4. INDICTMENT AND INFORMATION: amendment: striking unnecessary allegation *in re* nuisance.

A specification of the place of conducting the nuisance, other than to show that it was within the county, and therefore within the jurisdiction of the court, was unnecessary. *State v. Arnold,* 98 Iowa 253. If the case had gone to trial on such specification, a conviction could not have been had. *State v. Schuler,* 109 Iowa 111; *State v. Crogan,* 8 Iowa 523; *State v. Newland,* 7 Iowa 242; *State v. Hesner,* 55 Iowa 494. This would be because the place is stated as a matter of local description, and not as venue (*State v. Crogan,* 8 Iowa 523), or that the particularity is by the information made essential to identity. 1 Greenleaf on Evidence (15th Ed.), Section 65. A particular description may be necessary when abatement is sought. *State v. Schuler,* 109 Iowa 111. The court in *State v. Verden,* 24 Iowa 126, was evenly divided on the question whether, under the then

existing statutes, such a variance affected the substantial rights of the defendants upon the merits, requiring reversal. See *State v. Snyder,* 188 Iowa 1150. Here, the case did not go to trial on the specification of locality, and such specification was not, at the trial or in the judgment, an element of the offense or of the description. The defendants could not, by the amendment, have been prejudiced in their substantial rights, for the preliminary information laid the place in Cedar Township, and the minute of the testimony located the alcohol in accordance with the proof on the trial. There was no surprise.

By Section 13749, Code of 1924, the proceedings cannot be affected by reason of any surplusage or repugnant allegation, when there is sufficient matter alleged to indicate clearly the offense and the person charged. Speaking of an amendment of an information before a justice of the peace, in *State v. Abrams,* 131 Iowa 479, 480, it is said:

"The amendment to an information may be added by the same party making the original accusation, and there is no reason for denying any amendment 'consistent with orderly conduct of the judicial business with the public interest and with private rights.'"

See, also, *City of Ottumwa v. Stickel,* 195 Iowa 988.

By Section 13744, the court may order an indictment amended, to correct errors in matters of form or in the description of any person or thing. This is applicable to county attorney's informations. Section 13654. The word "form" is the antithesis of—it is in opposition to—"substance." *Thibodeaux v. Thibodeaux,* 112 La. 906 (36 So. 800). Substance is that which is essential. *State v. Burgdoerfer,* 107 Mo. 1 (17 S. W. 646). A particular description of the place of maintaining the nuisance, as stated, need not be alleged. It therefore is not of the substance. The indictment must show that the offense is triable within the jurisdiction of the court. Section 13743. Hence the county must be alleged. But the omission, in the absence of prejudice, is not cause for reversal. *People v. Goscinsky,* 52 Cal. App. 62 (198 Pac. 40). Here, on the minutes of the testimony, as well as on the original information, there was manifestly an error in designating the place as in the city of Cedar Rapids.

The statute authorizes amendments in the description of the "thing." The word "thing" is used in contradistinction to

"person." "Things" are distributed into two kinds, things real and things personal. Things real are such as are permanently fixed and immovable, as lands and tenements. 2 Blackstone's Commentaries 16; Standard Dictionary, "thing;" Webster's New International Dictionary, "thing."

Section 13747 declares:

"Such amendment shall not prejudice the substantial rights of the defendant, or charge him with a different crime or different degree of crime."

The purpose of the statute in permitting amendments thus clearly appears. As the defendant was fully apprised of the offense charged and the circumstances, and must have known that the designation of Cedar Rapids was an error, and no additional time was asked, he was not prejudiced. The allowance of the amendment was not erroneous. *State v. Anderson,* 154 Iowa 701; *State v. Frey,* 111 Kans. 798 (208 Pac. 574); *Thayer v. State,* 16 Okla. Cr. 712 (183 Pac. 931); *State v. Davis,* 106 Kans. 527 (188 Pac. 231); *People v. Perry,* 25 Cal. App. 337 (143 Pac. 798). See, also, *State v. Kappen,* 191 Iowa 19; *State v. Kiefer,* 183 Iowa 319.

V. It is said that permission to amend was given, but no amendment was in fact made. One objection was "that this amendment now offered is not an amendment in matter of form,

5. INDICTMENT AND INFORMATION: amendment: waiver of formal amendment.

but goes to the substance," etc. No objection that a formal amendment was not filed was made in the lower court, up to the exceptions to instructions and motion for new trial. The record showed that leave to amend was asked and granted. The trial was conducted as if the amendment had been made. By Section 13746 it might be dictated into the record. In substance, this was done. By Section 14010, this court must examine the record, without regard to technical errors or defects which do not affect the substantial rights of the parties, and render such judgment on the record as the law demands. The objection was purely technical. The defendants were in no wise prejudiced, either by the leave to amend or the failure to file the formal amendment, and are not entitled, on either account, to a reversal. *State v. Anderson,* 154 Iowa 701; *People v. Pokora,* 295 Ill. 442 (129 N. E. 173); *People v. Dewindt,* 67 Cal. App. 220 (227 Pac. 619); *People v. Goscinsky,* 52 Cal. App. 62 (198

Pac. 40) ; *State v. Gardner* (Mo. App.), 231 S. W. 1057; *State v. Lanto*, 98 N. J. Law 401 (121 Atl. 139) ; 17 Corpus Juris 287.

VI. The sheriff testified that he found the cans inclosed in cardboard or pasteboard cartons fitted around them.

"They have 4 flaps on each end that fold over. It is the same as other—well—I judge they are about 4½ or 8 or 10 inches. Each flap covers half of the can, or half of the top of the can or bottom."

He examined the car. He was asked what he found in the car, and answered, "3 bottles, two of them containing a trace of alcohol, and one had evidently had coffee in it. We also found a flap or part of one of these pasteboard cartons that had been torn off, and evidently left in the car."

Defendants moved to strike out the statement "flap or part of one of these pasteboard cartons," as the witness has not shown himself competent to state. The motion was overruled.

6. CRIMINAL LAW: evidence: opinion evidence: identity of part of exhibit: permissible conclusion. It is argued that this statement of the sheriff's was an opinion. It was a conclusion, but a permissible one. In ascertaining whether the flap or piece was torn from one of the cartons, the cartons and the piece, their texture, size, shape, and completeness, or integrity, the texture, grain, color, stains, stamping, printing, edges, surfaces, the fitting of the parts and edges, fold, and general appearance, would be matters of observation which could not be reproduced to the jury, but from all of which the fact as to whether the flap was torn from a carton would be readily observed. In *Commonwealth v. Sturtivant*, 117 Mass. 122, a witness testified that the appearance of bloodstains indicated the direction from which it came, and that it came from below upward. The court said:

"Such evidence has been said to be competent, from necessity, on the same ground as the testimony of experts, as the only method of proving certain facts essential to the proper administration of justice. Nor is it a mere opinion which is thus given by a witness, but a conclusion of fact, to which his judgment, observation, and common knowledge has led him, in regard to a subject-matter which requires no special learning or experiment, but which is within the knowledge of men in general. Every person is competent to express an opinion on a question of identity, as applied to persons, things, animals, or handwriting, and

may give his judgment in regard to the size, color, weight of objects, and may estimate time and distances. He may state his opinion in regard to sounds, their character, from what they proceed, and the direction from which they seem to come. *State v. Shinborn,* 46 N. H. 497. The correspondence between boots and footprints is a matter requiring no peculiar knowledge, and to which any person can testify. *Commonwealth v. Pope,* 103 Mass. 440. So, a person not an expert may give his opinion whether certain hairs are human hairs. *Commonwealth v. Dorsey,* 103 Mass. 412. And a witness may state what he understood by certain 'expressions, gestures, and intonations,' and to whom they were applied; otherwise the jury could not fully understand their meaning. *Leonard v. Allen,* 11 Cush. 241. In this connection may be noticed a large class of cases where, from certain appearances more or less difficult to describe in words, witnesses have been permitted to state their conclusions in relation to indications of disease or health, and the condition or qualities of animals or persons. * * * So those who have observed the relations and conduct of two persons to each other may testify whether, in their opinion, one was attached to the other. * * * It would also seem to be within the range of common knowledge to observe and understand those appearances, in marks or stains caused by blood or other fluids, which indicate the direction from which they came, if impelled by force. No one would question the fact that water passing over the surface of ground may and does, according to its force, leave clear and decisive indications of the direction of its passage. * * * These may not all easily be described in words, but may convey a distinct and decided impression to the mind at the time. * * * It is not the mere qualification of the witness, but the extent and thoroughness of his examination into the specific facts to which the inquiry relates, and the general character of those facts, as affording to one having his opportunity to judge, the requisite means to form an opinion. * * * Whether the reasons the witness gave for his opinion of the direction of the stain were sound or unsound does not affect the question of competency, and of course the defendant had full opportunity to test him by cross-examination, or to show by evidence or argument that his reasons were unsound.''

We are committed, as are the courts generally, to the same

rule. *Rothrock v. City of Cedar Rapids*, 128 Iowa 252. In this case, in answer to the question, "Did you notice anything about the snow?" the witness said: "Yes, sir; like as if someone had fallen there, and left the prints of their body." In holding that it was error to strike out this answer, it is said:

"The appearance to which witness referred was one difficult to describe to the jury so as to convey to the mind the inference of precisely what was indicated, and it has been held to be competent for a witness to testify to his conclusion when the matter to which the testimony relates cannot be reproduced or described to the jury precisely as it appeared to the witness at the time. * * * 'It must almost always be impossible for a witness to reproduce in words absolutely all the detailed data which enter into his estimate, and there can be no danger in receiving such an estimate from a competent witness.' "

See, also, *McIntosh v. Livingston*, 41 Iowa 219, 223; *Independent Sch. Dist. v. Independent Sch. Dist.*, 162 Iowa 686; 22 Corpus Juris 535; *Fort v. State*, 52 Ark. 180 (11 S. W. 959); *Klotz v. James*, 96 Iowa 1, 5; *Wilder v. Great Western Cereal Co.*, 134 Iowa 451, 457; *Jersey Island Dredging Co. v. Whitney*, 149 Cal. 269 (86 Pac. 691); *Stamets v. Mitchenor*, 165 Ind. 672 (75 N. E. 579); *Shaefer v. Missouri Pac. R. Co.*, 98 Mo. App. 445 (72 S. W. 154).

Such statements have been termed "shorthand rendering of the facts." In *Mobile, J. & K. C. R. Co. v. Hawkins*, 163 Ala. 565 (51 So. 37), it is said:

"The rule prohibits merely the drawing or stating of conclusions of law, which are questions for the court, and of certain conclusions of fact which, under the issues and the evidence, are exclusively questions for the jury, and to be determined from all the other facts or evidence in the case. These conclusions of fact are denominated by our court 'shorthand rendering of facts,' to distinguish them from mere gratuitous opinions, motives, and conjectures of the witness."

In *Rearden v. St. Louis & S. F. R. Co.*, 215 Mo. 105 (114 S. W. 961, 971), the court quotes with approval from 1 Wharton on Evidence (3d Ed.), Section 510:

"The true line of distinction is this: An inference necessarily involving certain facts may be stated without the facts, the inference being an equivalent to a specification of the facts.

\* \* \* In other words, when the opinion is the mere shorthand rendering of the facts, then the opinion can be given, subject to cross-examination as to the facts on which it is based.''

The witness must have made an examination sufficiently thorough to enable him to form an opinion. It would not have been error for the court to have stricken out the statement, in order that the sheriff might first testify more fully and specifically to the examination and comparisons made. It is apparent from his testimony referred to that he did examine the cartons, those about the cans and those from which the cans had been removed, observed them, and observed the flap or part torn off. On the record, it was within the administrative discretion of the court to require the witness's observations and the particulars of examination to be more fully set out, or to allow the answer to stand, and leave the parties to examine and cross-examine him with respect to them. *Lehman v. Minneapolis & St. L. R. Co.*, 153 Iowa 118, 122; *Samuels v. Griffith*, 13 Iowa 103; 11 Ruling Case Law 571 ; *McCarthy v. Anaconda Copper Min. Co.*, 70 Mont. 309 (225 Pac. 391) ; 22 Corpus Juris 514, 705; *Stale v. Gulliver*, 163 Iowa 123; *State v. Mulhollen*, 173 Iowa 242; 17 Corpus Juris 240; 40 Cyc. 2408.

The police officer testified, without objection, that, besides the filled cans, there were four or five cardboard containers similar to the ones that were around the cans; that they found in the automobile bottles and a piece of cardboard similar to the cardboard that was around the alcohol containers which were hidden in the bushes. The defendants were contented not to cross-examine either witness as to their observations or grounds for their statements. There was no error.

VII. Defendants contend that the evidence is insufficient to sustain a conviction. They concede that it might properly be found that the keeping of the alcohol at this place was a nui-

7. INTOXICATING
LIQUORS: nui-
sance: evidence:
sufficiency.

sance. *State v. Elliott*, 198 Iowa 71; *State v. Johnson*, 200 Iowa 324. The remaining question, therefore, is whether the evidence sustains the finding that the defendants were the keepers of it. It would be a reasonable conclusion from the circumstances that someone had the alcohol there temporarily and was selling it out. We think that the jury might reasonably conclude that the owner of the alcohol did not intend to keep it there for any length of time,

but only during the time necessary for its distribution; that the owner would be expected to visit the place to get a can or more, as he could place it; that the persons who, after eight hours' watch in the daytime, though residing in a distant city, correctly followed in an automobile a tortuous course over a byroad and a branch road and into private property, and who proceeded directly to the concealed liquor, one starting to take it, and the other remaining on guard, did so by design, and found it not by accident, but by previous acquaintance with the precise location, manifesting and admitting ownership; that they were the ones who were maintaining the alcohol at that place and disposing of it; and that, under the circumstances, they were not there merely as customers of some nondisclosed dealer, to procure from him liquor for the gratification of their appetites. Defendants' suggestion in argument that they might have gone there to steal the liquor, or to transport it for the owner, and, therefore, that the court or jury should presume that they were there to commit another crime, rather than the one charged, does not present a hypothesis that the court is required to accept, as matter of law. Neither does defendants' further suggestion in argument that they might have come to the place in question, two miles from a city, and a short distance from a filling station, in order that Ben could attend to a call of nature, and that he was in such an act in fastening or unfastening his belt as he raised up. The others of the "one hundred ways" which defendants say might account for their presence there have not been elaborated. The circumstances related, the conduct of the defendants, and their failure to make any explanation, present a jury question as to whether they were those who were maintaining the nuisance. See *Carver v. State* (Wis.), 208 N. W. 874. The case is entirely different from *State v. Marx*, 200 Iowa 884.

VIII. Defendants were sentenced to pay a fine of $1,000 each, and to serve one year in the county jail. They claim that the punishment is excessive. For the purpose of this question,

8. INTOXICATING LIQUORS: nuisance: non-excessive sentence.

we must assume them to be guilty of having had, at the place in question, not less than 70 gallons of alcohol, for immediate illicit distribution. The penalty inflicted should be such as to discourage the traffic by defendants and by others. We must decline to interfere with the sentence.

IX. Appellants move to strike from appellee's amendment to abstract that part setting out the justice's transcript and the preliminary informations, on the ground that they were not proved at the trial, and that they are not in evidence, and have nothing to do with the appeal. They are a part of the record. Section 13551, Code of 1924. The motion is overruled.

9. CRIMINAL LAW: appeal and error: record: scope and contents.

Thirty-five propositions are submitted for our consideration. We have discussed all that present any question of importance. The judgments are—*Affirmed.*

DE GRAFF, C. J., and STEVENS, FAVILLE, and VERMILION, JJ., concur.