STATE OF IOWA v. RAY McGHUEY, Appellant.

**Criminal law:** RAPE: EVIDENCE: SUFFICIENCY. On this prosecution for rape the evidence is reviewed and held sufficient to warrant a conviction for assault with intent to commit rape.

**Same:** MISCONDUCT IN ARGUMENT. On a criminal prosecution the question of punishment in case of a verdict of guilty is not a matter for the consideration of the jury, and it is improper for counsel in argument to discuss the question; as the duty of the jury is simply to determine the guilt or innocence of the defendant. And where counsel improperly refer to the severity of the punishment as an argument against conviction, the jury should be told to give the statements no consideration.

**Same:** EVIDENCE: COMPETENCY. The testimony of prosecutrix that after the commission of the offense she was deeply grieved was not prejudicial to the defendant, as it in no manner tended to connect him with the crime.

**Same.** Evidence that prosecutrix told her parents that defendant had raped her was not objectionable as a conclusion; since it was no more than a statement that intercourse with her had been accomplished by force, which is competent.

**Same:** EVIDENCE OF COMPLAINT: ADMISSIBILITY. It is only the voluntary complaint of a prosecutrix for rape that is admissible to strengthen her testimony; but where the statement was made in response to an inquiry under circumstances clearly indicating that she had already made complaint and the inquiry simply called for a verification of its truth, or the inquiry merely anticipated a statement which the complainant was about to make, it is not rendered inadmissible by the fact that the questioner happened to speak first.

**Same:** CORROBORATION: INSTRUCTION. In this action the jury was told that the defendant could not be convicted on the uncorroborated testimony of the prosecutrix, but that it was not necessary to prove the act by other direct testimony, and that neither evidence of complaint nor physical injury were sufficient corroboration, but admissible to support her testimony. *Held,* that the instruction did not in effect direct that such evidence connected defendant with the commission of the crime. And it is

further held that the instruction was not objectionable in that it told the jury in effect that independent evidence had been introduced tending to connect defendant with the offense.

**Same:**  TRIAL: REMARKS OF COURT.  While it is not the province of the court in a criminal case to express to the jury any opinion on the guilt or innocence of defendant, or to attempt to coerce the jury into rendering a verdict, still where it appears that the jury hesitates about returning a verdict because of the possible severity of the punishment in case of conviction, it is proper for the court to advise them that their only duty is to determine the guilt or innocence of the defendant, that the question of punishment is purely a matter for the court, and to urge upon them the desirability of agreeing upon a verdict.  In the instant case the court's remarks indicate no intention to coerce the jury or to express any opinion on the question of defendant's guilt, and could not have been so understood.

**Same:**  RECEPTION OF VERDICT: ABSENCE OF ATTORNEY.  The statute only requires the presence in court of the defendant when a verdict is returned in a felony case; so that absence of his attorney is not ground for error, where no request was made that he be present.

*Appeal from Ringgold District Court.*—HON. H. M. TOWNER, Judge.

THURSDAY, DECEMBER 14, 1911.

THE defendant was convicted of the crime of assault with intent to commit rape, and appeals.—*Affirmed.*

*Fuller & Fuller* and *Miles & Steele,* for appellant.

*George Cosson,* Attorney-General, and *John Fletcher,* Assistant Attorney-General, for the State.

SHERWIN, C. J.—I.  In the evening of June 12, 1910, Dottie Mickaels, who was then not quite sixteen years old, and lived with her parents on a farm, took part in public exercises which were held in Salem Church, a rural church situated about half a mile east of her father's home.  At

the conclusion of the exercises, the defendant asked Dottie
Mickaels if he might accompany her to her
home, and upon her assent thereto they en-
tered the defendant's buggy, and started
from the church in the direction of her father's house.
So far there is no dispute in the record. The Mickaels
house stood some ten rods from the main road, and was
reached through a lane, and Miss Mickaels testified that
the defendant drove past the lane, and stated that he would
drive down to the next corner and turn around; that when
they got to the corner indicated she asked him to turn
around and go back, but that he refused to do so; and
that he finally took her to a point several miles away from
her home, where he had sexual intercourse with her by
force and against her will. On the other hand, the defend-
ant testified that he did not drive beyond her home; that
when they reached the lane leading from the road to the
house they stopped and talked a few minutes; and that
he then drove on up to the house and left her. Counsel
for appellant earnestly contend that the evidence is insuffi-
cient to sustain the conviction, and it is perhaps better to
consider the matter in this connection. That this young
girl was forcibly defiled by someone between the time that
she left the church with the defendant and the time that
she entered her father's house two or three hours thereafter
does not admit of doubt. It was between 10 and 10:30
o'clock when the defendant and Miss Mickaels drove away
from the church that night, and, while the record does not
disclose the exact time that she reached her home, it may
fairly be inferred from the evidence as a whole that it
was around midnight. When she went into the house her
father and mother and the other members of the family
had gone to bed, and she at once went to her room, and
did not see her mother or father until the next morning.
But the next morning, between 5 and 6 o'clock, she saw
both of her parents, and soon thereafter, and as soon as

1. CRIMINAL LAW:
    rape: evidence:
    sufficiency.

her father had left the house, she told her mother what had occurred while she was with the defendant the night before. She then had fresh bruises on one of her arms and on one leg, and her underwear was torn and soiled in such manner as to corroborate her statement that she had been ravished. An examination by competent physicians a few days thereafter also showed that her hymen had been recently ruptured, and that her vaginal organ had been injured so recently that it was still unhealed. One of the physicians testified that the conditions present when he made the examination indicate that the injuries had been received four or five days or a week previous thereto.

The appellant urges that there is no evidence, except that of the prosecutrix, tending to show that they drove beyond the Mickaels house that night, or were where the crime is alleged to have been committed. The prosecutrix testified that during the drive before the crime was committed the carriage occupied by them was between two other carriages, and that she recognized the persons in the carriage behind them, by their voices, as the Wilson brothers. She also fixed the place where they left the company of the other carriages and turned north, which was shortly before the assault was made. The prosecutrix did not know who the occupants of the carriage ahead of them were. George Wilson testified that he and his brother were in a buggy driving along the road in question at about the time stated by the prosecutrix, and that two buggies were ahead of them for some distance; that one Ab Stevens and a lady were in the front buggy, but that he did not know who was in the buggy between his own and Stevens'. Stevens testified that he was on the same road that night; that Wilson was also there with his horse and buggy, and was the second one behind him; that the conveyance between him and Wilson was a carriage containing a man and woman; that he could not tell who they were, but that he noticed the team and harness, and a few days

after saw the defendant driving the same team. There was also other evidence tending to show that the defendant did not take the prosecutrix directly home, and that he did not reach his own home, a few miles from the home of the prosecutrix, until nearly 2 o'clock in the morning. We are abidingly satisfied that the verdict should not be disturbed on the ground of lack of evidence.

II.  In his opening statement to the jury one of the defendant's counsel said: "It is a very serious crime, gentlemen, one which, if you gentlemen should find him guilty, the court would sentence this defendant to the penitentiary for life." An objection to such statement was made, whereupon the court said to the jury: "The jury will not consider any such statement regarding the punishment. Under our law, there are so many matters connected with it that it is improper for counsel to discuss those matters to the jury." There was no error in this direction to the jury. It was the jury's right and duty to pass upon the facts presented for its consideration, and, when that was done, its responsibility ceased. If the facts were such as to demand a conviction under the law and the obligation of the oath taken, the punishment provided by the law could make no difference with the discharge of the duty imposed. Furthermore, while the crime of rape may be punished by life imprisonment, the statute also provides that the punishment may be for any term of years, thus giving the trial court wide discretion in the matter of punishment, and counsel clearly had no right to assert that the court would inflict the greatest penalty possible under the law.

2. SAME: misconduct in argument.

III.  The prosecutrix testified over the defendant's objection that after going to bed the night in question she cried. The competency of the statement is at least questionable, but as no question can fairly arise as to the commission of the crime charged by some person, and as the statement did not

3. SAME: evidence: competency.

tend to connect the defendant with the crime, we can not see that it was prejudicial to him.

IV.   The next morning after the occurrence the prosecutrix told her mother and father that the defendant .had raped her, and it is urged that such statement was a mere conclusion, and should not have been received. It was clearly competent to state that intercourse had been had by force, and that was the effect of the statements in question. *State v. Barkley,* 129 Iowa, 484; *State v. Peterson,* 110 Iowa, 647; *State v. Watson,* 81 Iowa, 380; *State v. Cook,* 92 Iowa, 483.

4. SAME.

V.   When the prosecutrix first told her mother what had occurred the night before, her father had left the house for his work. As soon as the mother was informed of the transaction, however, she went out where her husband was, and told him about it. While the record is not as clear as it might be relative to the matter, it fairly appears that the prosecutrix was present with her father and mother when her mother told her father what had happened the night before, and that she heard the statement made by her mother to her father. As soon as Mrs. Mickaels told her husband what the defendant had done the night before, he asked the prosecutrix whether it was so or not. She said it was so, and that the defendant had raped her. Complaint is made of the admission of the testimony of her father as to the statement made to him at that time by the prosecutrix on the ground that it was not voluntary, and therefore not a complaint within the meaning of the law. It is undoubtedly true that a statement of the kind involved here is not a complaint within the meaning of the law, unless it is the voluntary act of the injured party: It is the voluntary recital of her wrong that is received to strengthen the testimony of a woman who claims that she has been ravished. *State v. Bebb,* 125 Iowa, 494.

5. SAME: evidence of complaint: admissibility.

But the rule is not applicable to this case, because of

the facts under which the complaint was made. Complaint had already been made to the mother, and then the mother and daughter sought the husband and father, and the mother, in the presence and hearing of the daughter, told of the wrong, and the prosecutrix, in answer to a question as to the truth of the statement, said that it was true, and then repeated the complaint that she had made to her mother, without further questioning on the part of her father. The appearance of the prosecutrix before her father at that time was entirely voluntary, so far as the record shows, and it may fairly be said that she was there for the purpose of informing him of the wrong that she had suffered; and the fact that her mother first disclosed the horrible condition to her father in no way renders her own statement to him involuntary. Where the circumstances indicate that but for the questioning there would probably have been no voluntary complaint, the answer is inadmissible. But, when the question merely anticipates a statement which the complainant is about to make, it is not rendered inadmissible by the fact that the questioner happened to speak first. *Rex v. Osborne* (1905), 1 K. B. 551; 33 Cyc. 1468, note; *State v. Dudley,* 147 Iowa, 645.

VI. The court instructed that a conviction could not be had upon the testimony of the person injured, unless she be corroborated by other evidence tending to connect the defendant with the commission of the offense, and said: "This does not mean that the state is required to prove the act by direct testimony other than that of the prosecutrix, or by eyewitnesses of the transaction. It does, however, mean that there must be other testimony than hers, a showing of other facts and circumstances than those shown by her testimony, which shall tend to connect the defendant with the act charged." It was further said in the same instruction:

6. SAME: corroboration: instruction.

Complaints made by the prosecutrix to her parents

are not alone sufficient to constitute that corroboration required by the law. Evidence of such complaints are admitted, and may be considered, as tending to confirm and strengthen the truth of her testimony. A failure by the prosecutrix to complain at once is looked upon as a suspicious circumstance, indicating that her story may be a fabrication. Hence, testimony of such complaints are admitted and may be considered as confirming or disparaging the accuracy and veracity of the prosecuting witness, and for no other purpose. Testimony that the genital organs of the prosecuting witness were injured, or the hymen ruptured, is not of itself sufficient to constitute that corroboration required by the law. Such testimony is admitted, and may be considered, as tending to strengthen the testimony of the prosecuting witness, and as evidence tending to show that a rape had been committed by someone. Evidence of bruises on other parts of the body, and of torn and soiled clothing, are not alone corroboration, for none of these may tend to connect the defendant with the offense charged. But testimony as to these may be considered as showing, or failing to show, that a crime had been in fact committed, and that resistance had been or had not been made by the prosecutrix. Opportunity is not enough of itself to constitute the corroboration required by the law. But, while mere opportunity does not of itself amount to corroboration, yet, if opportunity is shown to have been defendant's intention, if he took occasion to bring it about, and if it was with apparent deliberation, such facts, if shown, may be considered with other facts, if any are shown, tending to connect the defendant with the offense charged. Any independent testimony which has been introduced on the trial of the case which tends to identify and single out the defendant as the perpetrator of the crime charged, and which, considered in connection with the testimony of the prosecuting witness, established the essential elements of the crime as herein stated, is properly to be considered as corroborating testimony, and the sufficiency is to be passed upon by the jury.

The appellant contends that the instruction, in substance, told the jury that complaints by the prosecutrix corroborated her testimony connecting the defendant with

the crime charged. Such is not a fair or reasonable construction of the language complained of, however, for the jury was expressly told therein that evidence of such complaints could only be considered as confirming or disparaging the accuracy and veracity of the witness, and this was said after the express statement that complaints would not constitute the corroboration required by law. It is also said that the instruction told the jury that injury to the genital organs would corroborate the testimony of the prosecutrix that the defendant committed the crime. The instruction can not be fairly so construed in our judgment, and the criticism is therefore unfounded. Appellant says that there was no evidence, except that of the prosecutrix, that the defendant had the opportunity to commit the crime, or tending to connect him therewith, and because thereof that the instruction was erroneous. It is further said that the instruction, in effect, told the jury that independent evidence had been introduced tending to single out the defendant as the perpetrator of the crime charged, when clearly there was no such testimony. These three complaints are without foundation, for the evidence fully warranted the instruction complained of. And for the same reason the court rightly refused to instruct the jury to find the defendant not guilty of rape and not guilty of an assault with intent to commit rape, as requested by the defendant.

VII. The court gave a full instruction on the subject of intent and correctly defined the term; hence, there was no error in refusing the defendant's eleventh request.

After the jury had been out with the case for some time, it returned into court and reported that it was unable to agree upon a verdict, whereupon the following colloquy took place between the court and the jury:

The Court: What is the trouble, Mr. Foreman? Foreman Porter: Well, it seems to me that in the minds of some of the jurors that that evidence is conflicting some

way or other.   They seem to think that the penalty seems
to be too severe for the offense.   The Court:   What does
the jury know about the penalty?   Foreman Porter:   That
is something I can't understand.   It is all supposition.
The Court:   The court is responsible in fixing the penalty,
and not the jury.   There is only one single question that
you have to decide, gentlemen of the jury, and that,
whether or not this defendant is guilty or not guilty, and
that is a question that the jury only should consider.   Now,
gentlemen, let me say this to you:   Either this defendant
is guilty or not guilty.   This case has been tried before
you very carefully and very ably on the part of both the
state and the defendant.   In all probability it can never
be tried as well for both parties as it has now.   You gen-
tlemen ought to return a verdict in this case.   It is your
duty to do so if you can possibly do so.   There is no rea-
son why you can not return a verdict in this case, because
certainly you are as well qualified to do so as any jury ever
will be.   If you can not return a verdict, who could?   Or
what jury could?   It is the object and purpose of the law
to have these cases determined.   Both the state and the
defendant have been ready to submit the case.   They have
submitted it carefully.   They have both of them done
everything they possibly could to enlighten you and to make
you ready and able to render a verdict in the case, and
there is no reason in the world why you should not return
a verdict in this case.   I think it is my duty to send you
again to your jury room and have you determine there
what you are bound under your oath to determine; and
that, being the sole and only question, is this defendant
guilty or not guilty?   Gentlemen, you may retire to your
jury room for further deliberation.

Error in various forms is predicated on these remarks
of the court, but appellant's main contention is that the
jury understood from what the court said that it was its
duty to return a verdict of guilty, and not
only that, but a verdict of guilty of rape.
The language used will bear no such con-
struction, unless there be added to it independent knowl-
edge on the part of the jury of criminal procedure, and

7. SAME: trial:
   remarks of
   court.

even then we do not think the jury could have so understood the court. It is, of course, fundamental that the court has no right to say to a jury in a criminal case that it must find the defendant guilty of the crime charged, or of any offense included therein. And where a court so far forgets its duty and the limitations upon its power as to so advise a jury, either in a direct or in an indirect way, it is the plain duty of this court to correct the error by granting the defendant a new trial to the end that the facts in his case shall be determined by a jury without any possibility of coercion on the part of the court. It will be observed that the court told the jury in the very beginning of his remarks that it was its duty to determine whether the defendant was guilty or not guilty. The further statement that he was either guilty or not guilty could not have been construed as meaning that he was guilty any more than would the fact that he was tried on the charge, for the sole and only question before both the court and the jury was his guilt or innocence. Nor could the same statement be construed as a direction to find the defendant guilty of rape, for the court had instructed that the charge of rape included assault and battery and simple assault, and the fact that the jury returned a verdict of assault with intent to commit rape negatives this contention of the appellant. The court did strongly urge the jury to agree upon a verdict, if it could do so, and that was the sole and only purpose of the trial. The jury was not put into the box for the purpose of playing with the administration of the criminal law, for the case was of the utmost importance to both the state and the defendant. Nor was the case submitted to it for the purpose of getting its opinion as to the justness of the punishment fixed by the lawmaking power of the state. Its sole and only province and duty was to determine from the evidence before it whether the defendant had committed one of the crimes charged in the indictment against him,

and the discharge of this duty was all that the court urged upon the jury at the time in question. The principal. authority relied upon by the appellant to support his contention in this matter is *People v. Kindelberger,* 100 Cal. 367 (34 Pac. 852), where it was held reversible error for the trial court to say to the jury, "That, in view of the testimony in this case, the court is utterly at a loss to know ·why twelve honest men can not agree in this case;" and follows such statement .with language which was a severe reflection upon the members of the jury. One material difference between the court's remarks in that case and in this is in the fact that there the court, in effect, told the jury that the evidence would warrant a verdict, which the jury might have .understood as indicating a verdict .of guilty, while here there was no word said from which the jury could rightly gather that any verdict should be returned against the defendant. But, while we think the decision in the California case was, perhaps, necessary under the record, we do not concur in all of the reasoning upon which it is based. It certainly is not a sound rule of law to say that, because a trial court does not direct a verdict for the defendant on his own motion, the jury is to conclude that the court thinks the defendant guilty, still such is the substance of the reasoning in the case. In the other cases cited by appellant, the language used by the trial court was held to intimate that he believed the defendant guilty. We do not intend herein to commend all that was said by the trial court, but nevertheless we think no coercion or opinion was intended by the court or understood by the jury. As sustaining the views herein expressed, see *State v. Olds,* 106 Iowa, 110; *State v. Lawrence,* 38 Iowa, 51; *State v. Richardson,* 137 Iowa, 591.

VIII. The verdict was taken in the presence of the defendant, but while his counsel were absent from the courtroom; and this is assigned as error. No request seems to have been made for the presence of counsel, and there was

no error in taking the verdict in their absence. Code, sec-

**8. SAME: reception of verdict: absence of attorney.**

tion 5403, requires only the presence of the defendant when the verdict in a felony case is rendered, and the presence of counsel is not required. *State v. Shepard,* 10 Iowa, 126; *Marlin v. State,* 79 Wis. 165 (48 N. W. 119); *Barnard v. State,* 88 Wis. 656 (60 N. W. 1058); *People v. Bennett,* 65 Cal. 267 (3 Pac. 868).

If the defendant had asked and had been refused the right to poll the jury by his counsel, a different question would be presented, a question that we do not now determine. We find no error which would justify a reversal herein, and, as we are satisfied that the verdict and judgment are fully supported by the evidence, the judgment must be, and it is, *affirmed.*