STATE OF IOWA, Appellee, v. P. J. MART, Appellant.

No. 46694.

OCTOBER 16, 1945.

REHEARING DENIED JANUARY 11, 1946.

Walter F. Maley and Volney Diltz, both of Des Moines, for appellant.

John M. Rankin, Attorney General, Charles H. Scholz, Assistant Attorney General, and F. E. Van Alstine, County Attorney, for appellee.

MILLER, C. J.— The altercation which resulted in the filing of a county attorney's information charging defendant with the crime of assault with intent to commit murder occurred at defendant's home on Sunday evening, October 29, 1944. It grew out of a dispute over the possession and use of a tractor plow owned by Lyle Nieman, which had been loaned by Nieman to Harold Loomis. Defendant had had negotiations with Nieman for the purchase of the plow. Earlier in the afternoon defendant had gone to the Loomis farm and, in Loomis' absence, had removed the plow to his farm. That evening Loomis and Nieman called at defendant's home to talk things over. Nieman stated to defendant that the sale had not

been completed and defendant contended that it had. Defendant and Loomis became engaged in a fist fight. Defendant got Loomis down and bit Loomis' hand. Defendant and Loomis got up and Loomis undertook to leave the place. He found the gate locked and attempted to climb over the yard fence. While Loomis was thus engaged defendant stabbed him in the back with a knife.

Loomis testified, in part, as follows:

"I just got up and stood back there as Mr. Mart was down on his haunches on the porch plumb helpless. I stood there waiting until he got up. He started shuffling in his pockets with his hands and I said to Lyle, 'Look out he is drawing a knife.' I started for the gate and Mart was cursing me all the way as I was going to the gate, he said, 'Come on back you yellow ———— and fight like a man.' I just kept on going. I couldn't get the gate open so I started over the house yard fence and was about half way over when I was stabbed in the back. After I got over the fence I walked to the road and called for Lyle. I knew I was cut in the back because I felt back there with my hand."

Nieman testified, in part, as follows:

"Mr. Loomis was to the south of the porch and Mr. Mart was between me and Mr. Loomis. Then Mr. Mart says, 'So that is the way you want it, Huh?' and he reached his hand in his pocket and pulled it out but that is all I seen, and he took after Mr. Loomis and Loomis started running toward the gate south. I was still up on the porch and I seen Mr. Loomis try to get over the fence and seen Mr. Mart hit him as he was going over the fence. As he was going over the fence I just seen Mr. Mart's hand hit him in the back with his right hand. It was dark then, no yard light. There was no light on the porch. I could see out to the gate from the light shining out of the house. After Loomis got over the fence he says, 'Well, he got me.' When Mart took down the walk after Loomis he was cussing * * * When I got to the road I found Loomis bleeding pretty bad. He says, 'Get me to a doctor.' He and I went to Dr. Gower in Pocahontas

at his home. I helped take his clothes off, his shirt and jacket. This jacket and shirt looks like the one I took off. It had that hole and stains in the back of it. I didn't take his undershirt off. I saw his back, it looked just like a long gash and was bleeding terrible.''

Dr. Gower testified in part as follows:

''I practice medicine here in Pocahontas. Graduated from the University of Chicago and interned eighteen months at Cook County Hospital in Chicago. I have had experience in treating different kinds of wounds including one knife wound that I recall. I recall treating Harold Loomis at my house on the night of October 29th. He was helped into the house and seemed to be in somewhat weakened condition. He told me he had a knife wound in the back. I proceeded to examine it and could see the clothing was bloody and that there was a wound on the right side of the back. We got him into bed in the next room, the clothes were removed and I prepared to take care of the wound surgically and scrubbed up and cleaned the wound. He was in somewhat weakened condition, almost collapsed on the floor in transferring him from one room to another and had to be lifted up on the bed. I presume the cause of weakness was loss of blood. Without medical attention his wounds could have been fatal. He was still bleeding but not profusely. If it hadn't been attended to the blood might have coagulated. It was not bleeding freely, just oozing. I examined the depth of the wound with a retractor. That is an instrument we use to spread the wound apart. The wound was about three and one-half inches long, starting over the lower right side of the chest and made a diagonal course for three and a half inches. With a retractor I could see one rib exposed at the bottom, so that it cut through the skin, the fat, and the muscle tissue down to the ribs on that side. It was a wound such as would have been made with a sharp instrument. I could not tell from direct examination the extremity of the wound or penetration, however the X-ray revealed some fluid inside of the chest cavity which I presume was blood.''

At the close of the State's evidence in chief, defendant made a motion for a directed verdict and the same was overruled. The motion was not renewed at the close of all the evidence. Defendant testified in his own behalf, in part, as follows:

"I remember my wife and Mr. Nieman asking us to break it up. Mr. Loomis said for me to let him up. After he asked me several times to let him up I let go of him and got up. As soon as Loomis got up and I got on my feet he started slugging me. He hit me in the right temple and above the left eye. I became very much dazed and reeled almost ready to go down. I reached in my pocket to get my knife. I have the knife here. * * * He started to leave and as I recall I must have went with him. Don't remember whether I struck him or not. The speed with which I followed him was slow rather than rapid. I didn't curse him to my knowledge. I don't know what blade of this knife was open. Would say it was the center blade because it is the easiest got open. * * * I at no time had any intention of killing anyone with that knife."

The abstract of the record shows no objection by defendant's counsel to any of the evidence or testimony. As above stated, the motion for directed verdict was not renewed at the close of the evidence. No exceptions were interposed to the instructions to the jury and there was no motion for a new trial. Of the eleven assignments of error urged here for a reversal, one challenges the overruling of the motion for directed verdict made at the close of the State's evidence (and not renewed). The other ten assignments challenge the instructions of the court, presenting questions which were not raised in the trial court.

I.  In State v. Bosworth, 170 Iowa 329, 331, 152 N. W. 581, 583, we stated:

"Error is assigned on the overruling of defendant's motion to direct a verdict. The motion was made at the close of the testimony for the State, and after its overruling, the defendant introduced his testimony. The motion was never

renewed. In this state of the record, we cannot review the assignment.''

The foregoing pronouncement was expressly followed in State v. Asbury, 172 Iowa 606, 615, 154 N. W. 915, Ann. Cas. 1918A, 856, and State v. Kneedy, 232 Iowa 21, 22, 3 N. W. 2d 611, 612, 613. We have also held repeatedly that objections to instructions not raised in the trial court will not be considered by this court. State v. Bingaman, 210 Iowa 160, 230 N. W. 394; State v. Bamsey, 208 Iowa 796, 223 N. W. 873, and cases cited. Pursuant to the foregoing pronouncements, this appeal could be summarily disposed of on the general proposition that none of the questions here presented was properly raised below. Defendant urges upon us that, under the provisions of section 14010, Code, 1939, it is our duty to consider the appeal and that recently, in the cases of State v. Ferguson, 233 Iowa 354, 6 N. W. 2d 856, and State v. Hall, 233 Iowa 1268, 11 N. W. 2d 481, we have, as a matter of grace only, considered questions which, under the usual rules of procedure, might have been disregarded. Because of the earnestness of counsel's plea, we have given careful consideration to the propositions relied upon, notwithstanding the absence of a showing that the questions were raised in the trial court, and, as a matter of grace only, will determine whether a reversal is warranted herein.

II. The challenge here made to the sufficiency of the evidence is based primarily upon the contention that the circumstances of the assault were insufficient to support a finding of an intent to kill. Of course, defendant's testimony that he had no such intent was not conclusive and could be overcome by proof of acts which gave evidence of such intent. We find no merit in defendant's contentions as to the insufficiency of the evidence to sustain a conviction.

We have held repeatedly that an intent to kill may be inferred from the use of a deadly weapon in a deadly manner. State v. Sullivan, 230 Iowa 817, 820, 298 N. W. 884, and cases cited. Such intent may be thus inferred though the wound inflicted does not prove fatal. State v. Bunn, 195 Iowa 9, 190 N. W. 155.

In the case of State v. Roan, 122 Iowa 136, 139, 97 N. W. 997, 998, we stated:

"The trial court gave the usual instructions with reference to deadly weapons, and as to the presumption arising from the use thereof in a deadly manner. It is insisted that an ordinary penknife is not a deadly weapon, and that the court was in error in giving this portion of its charge. Manifestly this is unsound. A penknife may or may not be a deadly weapon. If the weapon is such that from the manner of its use it is likely to produce death, it is, of course, a deadly weapon. That it was so used in this case there can be no doubt."

Defendant contends that the evidence herein was insufficient to sustain a finding that the knife that he used was used in a deadly manner and for that reason the foregoing pronouncements are not applicable herein. However, as above pointed out, Dr. Gower testified that, "Without medical attention his wounds could have been fatal." The doctor's testimony, together with that of Loomis and Nieman relative to defendant's conduct when he stabbed Loomis in the back, was sufficient to warrant the jury's finding that that knife was used in a deadly manner and that defendant assaulted Loomis with intent to kill him.

III. There are many objections urged here to the court's instructions to the jury. Most of them are predicated upon the proposition that the court failed to adequately advise the jury that the gist of the crime charged was the intent to kill. We find no merit in the contentions so made.

In State v. Parkin, 230 Iowa 991, 994, 299 N. W. 917, 919, we stated, "The rule that all instructions should be considered together is well settled." Numerous other cases could be cited to the same effect. In instruction 21, the court stated to the jury:

"You are instructed that intent is an important element of the crime charged in the information and of the included offenses."

This statement, when read with the other instructions,

188

accurately advised the jury of the importance of the element of intent herein. We have carefully considered all of defendant's contentions but do not prolong this opinion by individual disposition thereof.

The able counsel who represented defendant at his request in the trial below stated to the court:

"I will say again that from my view of the case that I do not think that the Court has made any error in its instructions or in the ruling of evidence in this case, and I for one am not in favor of putting up to the Court propositions of law in behalf of a defendant *whom* I know in my own mind that I feel are not worthy of the Court's attention, and I am not going to burden the Court with anything of that kind."

Counsel for defendant in this court express vigorous disagreement with the position thus taken. Differences of opinion are not uncommon among lawyers and litigants. It is our obligation to resolve such differences. In so doing herein, we hold that this defendant had a fair trial and that there was no prejudicial error which would warrant or require a reversal.

The judgment is—Affirmed.

OLIVER, BLISS, WENNERSTRUM, GARFIELD, MANTZ, SMITH, and MULRONEY, JJ., concur.

HALE, J., not sitting.