State of Iowa, Appellee, v. Lawrence Albertson, Appellant.

No. 46828.

October 15, 1946.

Ralph H. Munro, of Fairfield, and E. K. Bekman, of Ottumwa, for appellant.

John M. Rankin, Attorney General, Charles H. Scholz, Assistant Attorney General, and Ralph H. Goeldner, County Attorney, for appellee.

SMITH, J.—H. D. Tipton, the prosecuting witness, lived twelve miles southeast of Sigourney on the east side of a north-and-south highway. His farm buildings were about a block north of the south branch of the Skunk River, which flows easterly across the highway and across, or along the southerly border of, the Tipton farm. As one error relied on by defendant involves the sufficiency of the evidence to support the verdict it becomes necessary to examine the record, particularly the evidence adduced by the State.

About noon of November 14, 1944, Mr. Tipton, a man sixty-five years old, and his twenty-one-year-old daughter, Geraldine, were in a stubble patch near the barn when they saw two men in a boat on the river. The daughter says the men were lifting some "traps that us kids had set at the river. They were steel traps set for muskrat." Tipton himself testifies they "were looking at the traps."

Tipton got out of the wagon and started for the high bank of the river "just west of the boat." The daughter took the team to the barn and then went to the house and got the gun, "because us kids always take the gun when we look at the traps." Both she and her father deny that he told her to get the gun. Tipton says he asked the men what they were doing out there and they answered that it was none of his business. He told them to "get out of here and stay out," to which defendant, standing up in the boat, replied: "We'll go where we please, we pay a license for this." Tipton further testifies that defendant said to the man rowing the boat: "Pull out there, I will get that old son-of-a-bitch. He has bothered us enough"; that they pulled in behind a tree, that defendant came up the bank and the other man "just came to the top of the bank on his hands and knees"; that defendant kept saying, "Come on down here and I will get you." One witness describes the bank as being "from eight to ten to fifteen feet high."

The testimony continues:

"He [defendant] came up the bank with that stick; probably that long with a hook on the end, for raising traps I suppose. There it is right there, and he walked on up to me

and stood there about half a minute and kept telling me 'Come on, we'll get you' and then he stepped on up and took a swing at me with that stick and I drew my elbow up and he broke it across there."

There is much more. After the stick broke, the witness says, defendant picked up a little "native" board and struck again. Again the witness drew up his arm. "He hit three or four times and every time it broke. * * * Every time he hit me a piece broke off. * * * I raised my elbow up about even with my shoulder to ward off the blows."

The daughter testifies she saw the man strike her father but was not close enough to identify him:

"I was running and scared and I couldn't say how many times he struck at father. When I got to where my father was standing I seen his arm was bleeding and I handed him the gun. The men at that time were in the boat going east around the bend and down the river."

On cross-examination she testified:

"I wasn't close enough to the men to identify them, but one of them looked about the size of Mr. Albertson [defendant] * * *. I don't know how tall he is, but is better than five feet tall. I have seen him here in Sigourney at a trial where he was brought up for trapping. * * * I have seen Albertson I believe in March of this year. * * * At the time I saw him at the trial I knew who he was."

On cross-examination Tipton says:

"There were two men and I saw no one else. I did not know the man who was with Mr. Albertson. I had seen Mr. Albertson several times on my place. I seen him off and on for two or three years and a time or two had talked to him. I had known him to be Albertson. I knew him when I went down there."

It is undisputed that the two men in the boat were defendant and one Van Buskirk. They testify, however, that it was Van Buskirk who got out of the boat and had the altercation with the prosecuting witness and that defendant re-

mained in or near the boat and took no part in the melee. They claim Tipton invited them to ''come on in, I want to talk to you,'' and that he was the aggressor throughout. They claim Van Buskirk made no attempt to hit Tipton but only hit at the club Tipton was wielding.

Two other witnesses who had come to the river with defendant that day also testified corroborating defendant and Van Buskirk in a general way. One of them, defendant's brother Hollis, was in another boat with a fifth man who did not testify. The other was over in the highway with the truck in which the five had come from Ottumwa that morning and in which they brought the two boats.

The doctor who dressed Mr. Tipton's arm testifies:

''It was bruised and some cuts, one was larger and bled quite a bit. Location of cut was over the bony part of arm below the elbow * * *.''

Tipton says ''the arm was cut to the bone.''

Two State's witnesses testified that on November 12, 1944 (two days before the alleged assault), defendant said to them, speaking of the prosecuting witness: ''Yes, I know that old ——————————, I am going to kill him. You will find him floating in the river one of these days.'' Defendant denies this conversation and denies knowing the witnesses. Defendant and his three companions who testified each admitted having been convicted of a felony. The fifth man who was with them that day was in the Wapello county jail at time of this trial.

I. Appellant first contends that the verdict was contrary to the law and evidence. The point was raised in his ''motion for a new trial and to set aside the verdict.'' The only ground urged below was that the State failed to show it was appellant who committed the assault. No claim was then made that the evidence was insufficient to prove an actual assault with intent to commit great bodily injury. On appeal, however, it is now strenuously argued that the evidence does not tend to prove any intent to do great bodily injury or anything more serious than an ordinary assault and battery.

We have studied the record with care and are abidingly convinced it was for the jury to say whether appellant was the one who made the assault and whether there was an intent to do great bodily injury. Not much is to be gained by discussing the decisions in other cases. The two cited by appellant are not particularly pertinent except that they discuss well-known general principles. We have here clear questions of fact upon which the evidence is conflicting. We are unable to say the verdict was against "the clear weight of the evidence." This test is announced and the authorities discussed in State v. Carlson, 224 Iowa 1262, 1265, 276 N. W. 700, 772, one of the cases cited by appellant. Appellant and his witnesses outnumbered the State's witnesses but their credibility was in question and their version as to which one (appellant or Van Buskirk) got out of the boat and engaged in the altercation is no more reasonable or convincing than is the testimony of the prosecuting witness and his daughter.

Nor can we say there was not substantial evidence of an intent to do great bodily injury. As said in State v. Crandall, 227 Iowa 311, 316, 288 N. W. 85, 88 (the other case cited by appellant) :

"Necessarily, then, the intent [to inflict great bodily injury], in most cases must be established circumstantially, and by legitimate inferences from the evidence."

Appellant's statement made two days earlier to two disinterested witnesses and his conduct at the time of the assault, assuming the testimony of Tipton and his daughter to be true, are sufficient upon which to base a finding of intent to do great bodily injury. That the actual injury did not prove to be greater is not controlling. It may have been due to the timely appearance of the daughter with a gun.

Tipton was a man sixty-five years old. He was on his own premises. Appellant and Van Buskirk when they left the boat became trespassers thereon unless they did so by invitation. They say Tipton said he wanted to talk to them. It was not necessary to climb the river bank for that purpose. Whoever it was, whether appellant or Van Buskirk, he did not get out of the boat and climb a ten- or fifteen-foot bank merely to

have a conversation; at least, the jury could from this record so find. The question of intent was properly left to the jury.

■ II. Appellant complains of two instructions given by the court: One, No. 10, defining the terms ''just cause,'' ''justifiable,'' ''excusable,'' or ''excuse,'' as meaning ''a legal excuse or defense to the charge made or act alleged to have been done or committed''; the other, No. 17, relating to the fact that certain witnesses admitted having been convicted of a felony and advising the jury that ''this is one method provided by law for impeaching a witness.''

A short answer to these complaints is that no exceptions were taken in the trial court to these instructions. We have many times said that unless proper exceptions have been saved we will not review an alleged error in instructions. State v. Dunne, 234 Iowa 1185, 15 N. W. 2d 296; State v. Bingaman, 210 Iowa 160, 230 N. W. 394; State v. Mart, 237 Iowa 181, 20 N. W. 2d 63.

We have, on occasion, reviewed such assignments as a matter of grace. State v. Mart, supra. An examination of these instructions, however, suggests no reversible error and a strict adherence to our rule in this case can work no hardship upon appellant.

■ III. Appellant assigns as error the trial court's failure to give an affirmative instruction upon ''the sole defense of defendant, namely, that the alleged offense was committed by one other than the defendant; *the same constituting a special defense.*'' (Italics supplied.)

We find nothing in the record that would suggest to the trial court appellant was urging this as a special defense. No such instruction was asked nor any exception taken in the trial court to the failure to give one. The cases cited by appellant do not sustain this assignment. State v. Minella, 177 Iowa 283, 310, 158 N. W. 645, concerned the giving of an unrequested instruction on self-defense, claimed by defendant improperly to disparage the defense. It was held properly given. In Freeman v. State, 52 Tex. Cr. Rep. 500, 107 S. W. 1127 (also cited), the instruction was *requested* and refused. The Minella case, supra (177 Iowa at page 312, 158 N. W. at page 655), also involved the refusal to give a *requested* instruction

as to evidence tending to show someone other than defendant was in possession of the revolver immediately after the fatal shot was fired. Neither that case nor the cited Texas case avails this appellant, who requested no instruction.

This so-called "special defense" is not a defense of alibi though perhaps slightly analogous to it. We think it inhered in the plea of not guilty and no special instruction was necessary, at least in the absence of a request. We said in State v. Debner, 205 Iowa 25, 28, 215 N. W. 721, 723:

"Under a plea of not guilty, a defendant has a right to show, not only that he did not commit the act, but that he was doing something else at the time. In fact, very few criminal cases are tried * * * in which his [defendant's] whereabouts at the time of the act are not inquired into. Such evidence comes under the general defense, and generally does not require an instruction on alibi * * *. In such cases, where an alibi is not claimed, and the evidence of the defendant's whereabouts at the time of the act is incidental to his denial of guilt, no instruction on alibi is necessary or proper. State v. Bosworth, 170 Iowa 329."

See, also, State v. Walker, 217 Iowa 229, 251 N. W. 56.

Assuming, without deciding, that if appellant had requested an instruction it should have been given, we are clear there was no error in failing to instruct in the absence of request. In fact, we have held it reversible error to instruct on alibi when no instruction was asked and the evidence was not such as to justify the court in giving one. State v. Lindsay, 152 Iowa 403, 132 N. W. 857. In the case just cited there was a dissent on the ground that the error in giving the instruction complained of could not have been prejudicial. In the course of the dissent it is said:

"The defendant pleaded not guilty, and, of course, under that plea * * * he was entitled without other pleading to introduce evidence that at the time and place * * * he was elsewhere. It is only in a very loose and colloquial sense that such evidence can be spoken of as tending to establish a defense in a criminal case. State v. Reed, 62 Iowa, 40." 152 Iowa at page 407, 132 N. W. at page 859.

That part of the dissenting opinion was in harmony with the majority opinion. We think it pertinent here.

IV. The trial court sentenced appellant to the penitentiary "at hard labor for a period of not to exceed one year," the maximum statutory penalty provided for the crime charged. It is urged upon us that the punishment fixed is excessive.

Since the passage of the indeterminate-sentence law we have consistently held that if the crime is punishable, either by penitentiary sentence on the one hand or by fine and jail sentence on the other, the only discretion left to the court is to choose between them. If a penitentiary sentence is proper the statute fixes the maximum and the rest is in the hands of the parole board. State v. Giles, 200 Iowa 1232, 206 N. W. 133, 42 A. L. R. 1496; State v. Jenkins, 203 Iowa 251, 212 N. W. 475; State v. Overbay, 201 Iowa 758, 206 N. W. 634; State v. Bird, 207 Iowa 212, 220 N. W. 110, 222 N. W. 411.

We see no reason for interfering here. The trial court was in a position to appraise the situation and its judgment in prescribing a penitentiary sentence will be upheld.

The case is affirmed.—Affirmed.

GARFIELD, C. J., and OLIVER, HALE, BLISS, WENNERSTRUM, MANTZ, and MULRONEY, JJ., concur.

HAYS, J., takes no part.