STATE OF IOWA, appellee, v. JERRY MILLER, appellant.

No. 50586.

(Reported in 117 N.W.2d 447)

546

OCTOBER 16, 1962.

REHEARING DENIED DECEMBER 11, 1962.

Dekay & Barnes, of Atlantic, for appellant.

Evan Hultman, Attorney General, John Allen, Assistant Attorney General, both of Des Moines, Peter J. Peters, Pottawattamie County Attorney, and Manning Walker, Assistant Pottawattamie County Attorney, both of Avoca, for appellee.

548

SNELL, J.—Defendant-appellant was indicted on a charge of rape, tried before a Judge and jury, convicted of assault with intent to commit rape and sentenced to the reformatory for a period of not to exceed 20 years.

Prior to trial defendant filed a motion for order to produce statements (the motion was sustained), motion for continuance, two applications for writ of certiorari, motion to suppress exhibits and statements, notice of taking depositions, demurrers (the first demurrer was sustained and defendant then reindicted), motion to continue and in the alternative for time to prepare case. This last motion was filed October 26, 1961. The record shows counsel had represented defendant since prior to June 22. Four months time for preparation should be adequate. We have reviewed the record and the Clerk's transcript showing all preliminary proceedings and find no error.

I. Defendant then filed motion for change of venue on the ground that he could not receive a fair and impartial trial because of prejudice of the presiding Judge. The motion was overruled and defendant claims error. About 53 pages of defendant's brief and argument are devoted to this claimed error and to the duty of Judges.

 It is academic, axiomatic and beyond ground for debate that a defendant is entitled to trial in and before a fair, impartial and unprejudiced tribunal.

Because of the seriousness of the charge we have examined in detail not only the printed record, but also the Clerk's transcript of all proceedings and the Court Reporter's transcript of all the evidence.

 The charge of prejudice and unfairness is without support and is unfounded.

When a trial Judge must pass upon a motion for change of venue based on allegations of his own prejudice he must consult his own feelings, as well as other matters, and grant or deny the change, as he may think the right demands, in the exercise of a careful discretion. Abuse of discretion must appear before we will interfere. State v. Foley, 65 Iowa 51, 52, 21 N.W. 162; State v. Billings, 77 Iowa 417, 423, 42 N.W. 456; State v. Williams

197 Iowa 813, 816, 197 N.W. 991; State v. Mauch, 236 Iowa 217, 224, 17 N.W.2d 536. Here there was no abuse of discretion.

II. No useful purpose would be served by reciting the lurid details of the events leading to the indictment in this case.

The prosecuting witness and defendant had met only once before. Defendant was a married man. His wife, following an argument, was away "until we got things hashed out."

With some slight reluctance but at the invitation of friends the prosecuting witness went on a double date with defendant and another couple. The date, arranged by others, began in the late evening following a high school alumni party. The two couples went by car to a place called Pix. Pix is a place where food, setups and drinks are served and dancing is permitted. One of the men had a bottle of vodka. The prosecuting witness drank no liquor but otherwise there was general participation. About two hours were spent in visiting, drinking and dancing. From time to time other customers joined the group and another friend was invited to ride home with them. During the first part of the trip home there were five in the car.

The parties did not live in the same town and so had to separate. The prosecuting witness suggested that she ride the rest of the way with the other couple and thus relieve defendant of an extra trip. Defendant, however, insisted on taking her home in his own car and the tragic part of the evening followed.

Instead of following the main highway defendant turned off onto a country road, stopped, parked and turned off the car lights. The parties tell an entirely different story as to what followed. The prosecuting witness says she protested against parking. She described her struggles against defendant's advances, her frantic and vigorous defense of her virtue, her outcries, defendant's use of force and his final success in having intercourse against her will. Defendant tells of amorous activity, admits intercourse but denies use of force.

Defendant finally took the prosecuting witness home. She ran into the house carrying her undergarments, called to her parents, and said she had been raped. It was then about 4 a.m. A doctor was called by phone and the prosecuting witness and

her parents went to the doctor's office. An extensive examination was made by the doctor.

III. The mother and father of the prosecuting witness and the doctor who examined her testified to statements made by her soon after the alleged offense. These statements were clearly a part of the res gestae. They were admissible in corroboration. State v. Mitchell, 68 Iowa 116, 119, 26 N.W. 44; State v. Altomari, 199 Iowa 43, 46, 201 N.W. 51; State v. McGhuey, 153 Iowa 308, 313, 133 N.W. 678; State v. Stafford, 237 Iowa 780, 23 N.W.2d 832; Van Wie v. United States, 77 F. Supp. 22, 46. See also 24B C. J. S., Criminal Law, section 1915(16).

Standing alone statements made to the doctor who treated the prosecuting witness were not of any probative value as to the circumstances of the alleged offense, but they were admissible to show why the doctor was called to his office at 4 a.m. and to give the reason for his examination. The history of an ailment is a part of a doctor's examination and the history as given to him may be stated in connection with his opinion. State v. Blydenburg, 135 Iowa 264, 273, 274, 275, 276, 112 N.W. 634, 14 Ann. Cas. 443; Devore v. Schaffer, 245 Iowa 1017, 1021, 65 N.W.2d 553, 51 A. L. R.2d 1041.

The jury might well have been cautioned as to the limited purpose of this testimony, but there was no reversible error in its admission.

In Division IV infra we set out the court's instruction as to this testimony.

IV. Defendant vigorously assails the admission of the doctor's opinion as an improper invasion of the province of the jury.

The doctor described in great detail the girl's condition determined from physical examination; her disheveled condition and appearance, her torn and bloody clothing; and her state of shock. He noted swollen parts, abrasions and contusions and their location. He gave the findings of his examination of the vagina and vaginal vault. He did a smear test under a microscope and a Wassermann blood test. He described and explained his observations, findings and treatment. He stated that prior to this assault the girl was a virgin.

Questions were then asked and answers received over defendant's objections, as follows:

"Q. Now, Doctor, is there any medical means of telling from an examination of a girl, a woman, within two or three hours of having intercourse, whether or not that intercourse was voluntary or a forced penetration? Can you answer that question?

"Mr. Dekay: That is objected to for the reason the witness is incompetent; the question is incompetent, it is outside the scope of defendant's testimony; for the reason it invades the province of the jury.

"The Court: Overruled.

"The Witness: Will you repeat the question?

"(Last question read by the Reporter.)

"A. In some instances, yes.

"By Mr. Walker: Q. From your examination of Patricia Basler, could you express an opinion, based upon your experience and training? A. Yes.

"Mr. Barnes: The defendant objects to this line of questioning for the reason it invades the province of the jury; no proper foundation laid; it is irrelevant and immaterial; the foundation as to the circumstances have been not properly made of Record.

"The Court: Overruled.

"By Mr. Walker: Q. What is your opinion as to Patricia's situation?

"Mr. Dekay: That is objected to for the reason that the question of whether or not this intercourse, if there was intercourse, was voluntary is for the jury. The witness is now being asked the ultimate fact; we object to it therefore on the ground that it does invade the province of the jury, and it is the ultimate fact that is being asked; it is outside the scope of expert testimony at this point.

"The Court: Overruled; he is merely asking his opinion. You may answer.

"A. Yes, I would say she was forcibly raped or had intercourse or whatever you want to call it. Certainly not submitted to under those circumstances which she showed me that night."

The leading authority on the admissibility of expert testimony is the well-known case of Grismore v. Consolidated Prod-

ucts Co., 232 Iowa 328, 5 N.W.2d 646, wherein the authorities are exhaustively analyzed and the rule of admissibility established. In that case the objection to the expression of an expert opinion as to the ultimate fact was based on two grounds. First, the proposed expert opinion was not predicated on any basis of scientific knowledge or skill, and second, it invaded the province of the jury. In the case at bar the doctor laid a firm foundation and basis of scientific knowledge and skill for his opinion.

We quote excerpts from the Grismore opinion:

"The courts and other authorities uniformly agree that the receipt of opinion evidence, whether lay or expert, and the extent to which it will be received in any particular case, are matters resting largely in the administrative discretion of the court. [Citations] Courts should be, and are, very loathe to interfere with such discretion unless it has been manifestly abused to the prejudice of the complaining party. * * *." See page 342 of Iowa Reports.

On page 344 it is said:

"All of these objections stem from a misconception of the necessity and purpose of opinion testimony. Any such objection is not valid or tenable if the opinion called for is about a matter which is a proper subject of opinion testimony. No such an opinion can invade the province of the jury or usurp its functions, even though it passes upon a controlling fact, or the ultimate fact which the jury must determine."

Beginning on page 345 it is said:

"Jurors and witnesses have separate and distinct functions. It is the duty of the jury to decide issues of fact. A witness could not usurp that function or invade the province of the jury, by his opinion, if he wished. It may accept it wholly, or in part, or reject it in toto. If the opinion meets with its approval it should accept it. The purpose of court trials is to ascertain the truth and rightness of the matters in issue, and the purpose of expert-opinion testimony is to instruct and aid the jury in ascertaining that truth, whether it be the ultimate fact or some minor evidential fact."

■ On page 351 the opinion quotes with approval the Maryland rule as follows: " 'We adopt the prevailing view that the

opinions of medical experts are admissible as to the cause which *produced*, or *probably produced*, or *might have produced*, a certain physical condition.'" The Grismore opinion definitely holds that a properly qualified expert may express his opinion "either as to the possibility, probability, or actuality of the matter of fact about which he is interrogated, and the answer will not be an invasion or usurpation of the province or function of the jury. even though it passes upon an ultimate fact which the jury must determine." See page 361 of Iowa Reports.

Dean Mason Ladd, College of Law, State University of Iowa. has written extensively on expert testimony.

In an article in Vanderbilt Law Review, April 1952. Volume 5, No. 3, page 414, he says "An expert who is personally familiar with the facts, as the physician or surgeon who attends a patient, may express his opinions based upon personal observation and also answer hypothetical questions involving his specialized knowledge upon the subject" * * * "Wide discretion is given to the trial judge in determining the qualifications and his decision is final except in the case of a clear and flagrant abuse."

In his commentary on Iowa Law of Evidence and Uniform Rules of Evidence published in the 1959 Workshop Outlines, Iowa State Bar Association, Dean Ladd quotes Rule 56 Uniform Rules of Evidence. Pertinent parts of the rule are:

"Rule 56. *Testimony in Form of Opinion.*

"(1) * * *

"(2) If the witness is testifying as an expert, testimony of the witness in the form of opinions or inferences is limited to such opinions as the judge finds are (a) based on facts or data perceived by or personally known or made known to the witness at the hearing and (b) within the scope of the special knowledge, skill, experience or training possessed by the witness.

"(3) Unless the judge excludes the testimony he shall be deemed to have made the finding requisite to its admission.

"(4) Testimony in the form of opinions or inferences otherwise admissible under these rules is not objectionable because it embraces the ultimate issue or issues to be decided by the trier of the fact."

A little later this comment appears "There are many hair

splitting decisions dealing with the choice of language used by the witness to communicate his understanding of the facts. * * *

"Uniform Rule 56(2) succinctly states the present Iowa law."

In the case at bar except for the use of the word "raped" there would be no question but that the doctor's answer would be admissible under well established authorities. He was testifying as an expert to a question of fact and was giving his professional opinion based upon his own observations. He was using the word "raped" as he understood it. A reading of the whole series of answers shows that the doctor was stating his opinion and conclusion that the girl had been subjected to intercourse by force and not by voluntary submission. The answer was not phrased in recommended legal form, but it would be "hairsplitting" to hold that the use of the one word injected reversible error into the case. For a comparable situation and authority in point see State v. Cox, 172 Minn. 226, 215 N.W. 189.

As said in the Grismore case, supra, no witness should be permitted to give his opinion directly that a person is guilty or innocent, or is criminally responsible or irresponsible. These are mixed questions of law and fact and are not subjects of opinion testimony. In the instant case the doctor was not pointing a finger of guilt at anyone in particular. He was stating what as a matter of fact had happened to the girl.

The word "rape" is not peculiar to the law or legal language. It appears in the chapter heading and in several of our statutes, but the word does not even appear in section 698.1, Code of Iowa, defining the offense with which defendant was charged. The word does, however, have a commonly understood meaning and is no stranger to nonlegal language.

The trial court gave to the jury the legal definition of the offense charged and stated the essential elements. The defendant can claim no prejudice from the use of the word "raped" by the doctor because the jury obviously did not accept his conclusion in that particular. The jury did not convict defendant of rape. Apparently the jury accepted the evidence of assault, and intercourse having been admitted, concluded that the assault was made with intent to commit rape. As said in the quotation from

the Grismore case, supra, we are loathe to interfere with the discretion of the trial court where there is no manifest abuse to the prejudice of defendant. Here the jury verdict answers the claim of prejudice.

On the question of expert testimony the trial court instructed the jury as follows:

"A witness has been called who has testified as an expert as to the physical and mental condition of the complaining witness Patricia Basler on the early morning of May 28, 1961. The law allows those skilled in such matters to express their opinions upon those subjects based upon personal observation.

"This testimony should be considered in connection with the knowledge, skill and experience possessed by the witness, but it is solely the province of the jury to say what weight it should receive. The opinions expressed by this witness are not binding or conclusive upon you, but it is your duty, from all the evidence and the facts and circumstances in the case, including the testimony of the expert witness, to determine the questions of fact now submitted to you."

The jury obviously exercised its privilege and right in evaluating the testimony.

There is no reversible error in the admission of testimony that the jury did not accept.

V. There was other evidence of assault, intent and resistance. The deputy sheriff testified that when defendant was arrested the next day after the alleged offense defendant had "scratch marks on his arms, his forearms above the wrist around the wrist and it looked like he had been bit on the side of his cheek" and a small scratch on the other side of his face. The deputy sheriff also testified, without objection, that defendant admitted intercourse with the prosecuting witness, that she resisted but he "thought she was just playing hard to get."

VI. Defendant claims that misconduct of the county attorney and questions to defendant deprived him of due process of law.

We find nothing in the record to substantiate this claim and nothing requiring review.

There were areas of disagreement between counsel. That is

not unusual in the trial of a major felony case. The record shows nothing beyond the proper control of the trial court.

A few questions asked defendant were tinged with sarcasm but were within the proper limits of cross-examination.

Counsel for defendant did not at the time ask for a mistrial or that the jury be admonished. Objection now is not timely. State v. Olson, 249 Iowa 536, 555, 86 N.W.2d 214.

VII. Defendant complains of a comment by the court while defendant was attempting to identify a picture of defendant's car for use as an exhibit. In response to an objection by the county attorney the court said "I don't think that is very important. I am going to let him answer it." The picture was admitted as an exhibit. Defendant claims the court's remark disparaged the exhibit. It appears to have been a rather innocuous comment directed at the State's objection. It does not appear to have been directed at the probative value of defendant's evidence. Defendant was not prejudiced. State v. Jensen, 245 Iowa 1363, 1368, 66 N.W.2d 480.

VIII. Section 782.4, Code of Iowa, provides: "The defendant in a prosecution for rape, or assault with intent to commit rape, * * * cannot be convicted upon the testimony of the person injured, unless she be corroborated by other evidence *tending to connect the defendant with the commission of the offense.*" Emphasis added.

Defendant admitted intercourse with the prosecuting witness at the time and place in question. This was sufficient corroboration for compliance with the statute. State v. Haugh, 156 Iowa 639, 642, 137 N.W. 917.

If there was an offense the connection of defendant therewith was not disputed. The physical condition of the prosecuting witness, the marks and scratches on defendant and his statements and admissions, connect defendant with the offense.

IX. The jury was not instructed on the necessity for corroboration and defendant now claims error.

The giving of such an instruction is customary and its use is recommended as routine precaution. Here, however, defendant cannot claim error.

In the light of defendant's admissions there was no

particular issue as to the corroboration required by the statute. There was no request for such an instruction. There were no exceptions taken because of the omission. No alleged error based on the omission was included in the motion to set aside the verdict or for a new trial. The issue was never raised in the trial court.

"In this state of the record, we cannot review the assignment." State v. Mart, 237 Iowa 181, 186, 20 N.W.2d 63; State v. Albertson, 237 Iowa 1148, 1153, 24 N.W.2d 395; State v. Walters, 244 Iowa 1253, 1261, 58 N.W.2d 4.

As a matter of grace we have reviewed the instructions in their entirety. The court's instructions fairly presented the case to the jury and more explicit instructions should have been requested by the defendant if he desired them. State v. Walters, 244 Iowa 1253, 1261, 58 N.W.2d 4.

X. At the close of the evidence, both sides having rested, the following record appears:

"The Court: I think we are up to the point of opening arguments by counsel for the State.

"There is a little more work I want to do on instructions. Will you gentlemen excuse the Court's presence in the courtroom during this?

"(Whereupon the jury was duly admonished by the Court as to conduct and a short recess was taken.)

"(Whereupon closing arguments to the jury were presented for both parties to the suit. After closing arguments, and, not within hearing of the jury, the following took place in chambers after the preliminary draft of the instructions had been submitted to counsel for both parties.)

"Mr. Dekay: Let the Record show that the defendant objects to the instructions for the reason that they do not include simple assault and battery; and that nowhere in the instructions is the jury told that the fact that consent prior to penetration, even though reluctantly given, is consent if it, in fact, was voluntary.

"Further, there is no instruction to the jury that submission constitutes consent.

"For the reasons, there isn't any instruction that tells the

jury that the prosecuting witness is old enough to consent to intercourse. That is all.

"Mr. Walker: I object to that last one. That is a negative approach.

"The Court: The exceptions taken are without merit and are therefore overruled.

"(Whereupon the final draft of the instructions was read to the jury by the Court, and the jury panel retired for deliberations at 3 o'clock p.m.)"

It does not appear that the preliminary draft of the instructions was submitted to counsel before argument. Error based on the omission is now urged. The question was never raised nor error claimed in the trial court.

Rule 196, R. C. P., provides in part as follows:

"Before argument to the jury begins, the court shall furnish counsel with a preliminary draft of instructions which it expects to give on all controversial issues, which shall not be part of the record. Before reading them to the jury, the court shall submit to counsel its instructions in their final form, noting this fact of record, and granting reasonable time for counsel to make objections after argument to the jury and before the instructions are read to the jury."

Section 780.4, Code of Iowa, provides that the provisions relating to the manner of trial of civil actions apply to the trial of criminal actions.

No request was made by counsel before commencing argument, no objection offered and the matter was never called to the court's attention. Under the rule and the statute counsel were entitled to see the instructions before argument but it is "clear that counsel, called upon to argue the case before having seen the instructions, may not proceed so to do without protest and later claim error." State v. Zbornik, 248 Iowa 450, 458, 80 N.W.2d 735; see also State v. Holder, 237 Iowa 72, 83, 20 N.W.2d 909.

The error now urged is not timely.

XI. Section 753.2, Code of Iowa, provides: "The local jurisdiction of the district court is of offenses committed within the county in which it is held * * *."

Section 604.12, Code of Iowa, provides "* * * in the county

of Pottawattamie, court shall be held at Avoca, as well as at the county seat."

Section 773.42, Code of Iowa, provides, "The court may, on motion of the state, and before or during the trial, order the indictment so amended as to correct errors or omissions in matters of form or substance."

Section 773.45, Code of Iowa, provides, "Such amendment shall not be ordered when it will have the effect of charging the accused with an offense which is different than the offense which was intended to be charged in the indictment as returned by the grand jury."

The indictment captioned "District Court of Pottawattamie County, Iowa, at Avoca," returned by the grand jury charged an offense in the "County of Pottawattamie and State of Iowa, and *west* of the west line of Range 40, therein." (Emphasis supplied.) Trial was at Avoca.

During the trial on motion of the State the indictment was corrected to read "*east* of the west line of Range 40." The correction was made over defendant's objection.

▇▇▇ An indictment must show that the offense is triable within the jurisdiction of the court. The county must be alleged. State v. Japone, 202 Iowa 450, 455, 209 N.W. 468.

▇▇▇ The jurisdiction of the district court of Pottawattamie County is not questioned. The indictment showed on its face that the venue was Avoca, one of the statutory places for holding court in the county. The defendant was never taken by surprise as to the claimed location of the alleged offense. The minutes attached to the indictment gave the location as south and west of Walnut. The parties were traveling from Atlantic toward Hancock. Exhibit 15 introduced by defendant is a map of Pottawattamie County. It shows all of the locations mentioned to be east of the west line of Range 40.

The amendment corrected an apparent and clerical error. It did not charge a new offense. It was permissible under the statute.

In State v. Brundage, 200 Iowa 1394, 206 N.W. 607, a change of the date of the offense charged from 1925 to 1924 was approved. In the instant case whether the offense was committed

east or west of a range line, if still within the county, was less vital than a year's variation in the date of an offense.

XII. Defendant argues that the court should have submitted the included offenses of assault and battery and assault.

We have held to the contrary.

■■■ If defendant was guilty of the offense charged it was because it was without the consent of the prosecuting witness. He was either guilty of the crime charged, or of assault with intent to commit rape or not guilty. Such a situation does not require the submission of offenses often included in a charge of rape. State v. Holoubek, 246 Iowa 109, 112, 66 N.W.2d 861.

■■■ XIII. The trial court imposed a sentence of not to exceed twenty years. This is the maximum provided by statute. Under the provisions of section 698.4, Code of Iowa, a sentence for a lesser period could have been imposed, the provisions of the indeterminate sentence law to the contrary notwithstanding. Defendant asks us to reduce the sentence. Defendant was tried before an able and experienced trial Judge and jury. If guilty at all he was guilty of a cruel and brutal offense. He was found guilty. The fact that the prosecuting witness was indiscreet in dating a married man does not excuse or mitigate defendant's offense. Under the circumstances disclosed by the record we would not be justified in interfering with the statutory discretion of the trial court. State v. Kramer, 252 Iowa 916, 921, 109 N.W.2d 18; State v. Schlak, 254 Iowa 669, 117 N.W.2d 554.

XIV. The charge against the defendant is a serious one. In addition to the argument of counsel we have pursuant to the mandate of section 793.18, Code of Iowa, and as a matter of grace examined the entire record. We conclude that defendant has had a fair trial.

The case is—Affirmed.

All JUSTICES concur except THORNTON, J., who dissents.

THORNTON, J. (dissenting)—I respectfully dissent from Divisions VIII and IX. It was the duty of the trial court to instruct on the necessity for corroboration. The effect of this failure and the majority opinion is to direct a verdict against the defendant

on this fact issue. I would reverse under the authority of section 793.18, Code of Iowa.